Alfred BRIDGES, Claimant–Respondent,

v.

RELIABLE CHEVROLET, INC., Van
Enterprises and Legion Insurance
Company, Appellants.

No. 20835.

Missouri Court of Appeals,
Southern District,
Division Two.

March 4, 1997.

John Wise, Whiteaker & Wilson, P.C., Springfield, for appellants.

Lincoln K. Knauer, Bryan O. Wade, Husch & Eppenberger, Springfield, for respondent.

PARRISH, Judge.

Reliable Chevrolet, Inc., (Reliable) and Legion Insurance Co. appeal an award of the Labor and Industrial Relations Commission (the commission) awarding Alfred Bridges (claimant) total disability compensation as a result of injuries sustained in an automobile accident. This court affirms.

Claimant had been employed by Reliable since 1981. On the date of his accident, January 3, 1995, he was fleet manager for Reliable. He had primary responsibility for making multi-unit sales. He also made some single-unit sales.

Claimant's job required him to be away from Reliable's business premises a substantial amount of time. His job included making sales calls, deliveries and service calls. He worked basically on his own. Claimant was not required to keep his supervisor informed about his day-to-day, hour-to-hour, minute-to-minute schedule.

Claimant was provided a company-owned car for his use. He did not own a personal vehicle. The automobile was provided under the terms of a written agreement. Its terms include, "The employee is required to drive a make of automobile sold by the employer, however the employee will be assigned a model of automobile, in the color, and with equipment as determined by the employer." The agreement further states, "The automobile is for sale at all times and the employee must change automobiles at the employer's convience [sic]." It explains, "The automobile is our showroom on wheels and the employee should strive for high visibility of the automobile to help advertise the employer's product."

Claimant was responsible for keeping the interior and exterior "clean and well groomed at all times." He had to make the automobile available for sales demonstrations and other errands. He was responsible for changing oil and lubricating the automobile at 3,000 and 6,000 miles.

On January 3, 1995, at approximately 3:00 p.m., claimant was driving a Chevrolet Camaro Z–28 provided by Reliable northbound on Highway 160 in Greene County, a four-lane highway, when a brown Cadillac pulled through an intersection into his path. Claimant braked, then swerved hard to the right to avoid hitting the Cadillac. There was mud and clay on the roadway from a construction site. The Camaro slid sideways and crossed a median into the southbound lanes of travel on Highway 160. It struck a truck then bounced into the ditch along the roadway.

An ambulance was called. Paramedics, assisted by a deputy sheriff, removed claimant from the automobile he was driving and transported him to an emergency room at Cox Medical Center in Springfield. He has been in a coma since the accident.

A blood analysis was performed at the hospital. The laboratory report states:

| ALCOHOL (ETHANOL) | COLLECTION TIME 15.40 | 01/03/95 | 0138824 |
|---|---|---|---|
| ETHANOL 0.000% | 0.186 * | | |
| SPECIMEN TYPE | PLASMA | | |

A hospital admission report of Marc R. Wittmer, M.D., states:

IMPRESSION:

1. Motor vehicle accident with the following problems:

   A. Closed head injury;

   B. Lacerations of scalp, ear, and face, as noted.

2. Alcohol intoxication.

Claimant was not required to obtain approval to leave Reliable's business premises during work hours. Reliable had a procedure for logging personnel in and out through the telephone switchboard operator when they left the premises. The switchboard operator testified that she logged

claimant out at 11:25 a.m. the morning of January 3, 1995.

The only information concerning claimant's whereabouts between the time he left Reliable and the time of the accident was provided by a Reliable employee who was identified in the hearing testimony as "Mr. Sharer." An investigator testified that Mr. Sharer reported seeing claimant drive through the intersection of Glenstone and Primrose in Springfield shortly after noon the day of the accident.

Reliable and its insurer contend the commission erred in awarding claimant benefits; that "its finding that [claimant] sustained injuries as a result of an accident arising out of and in the course of his employment with Reliable Chevrolet was not supported by substantial evidence and/or was contrary to the overwhelming weight of the evidence" in three respects:

    A.  At the time of the accident at issue, [claimant] had a blood alcohol level of .186 percent and was intoxicated;

    B.  At the time of the accident and for an approximately three hour period immediately preceding it the only inference to be drawn from the evidence is that the [claimant] was not engaged in Reliable Chevrolet's business; and

    C.  At the time of the accident at issue, [claimant] was not engaged in any activities of "mutual benefit" to Reliable Chevrolet.

■ This court's review of the commission's award is a two-step process. The record is examined, considering the evidence adduced together with all reasonable inferences that may be drawn therefrom in the light most favorable to the findings and award, to determine if the findings and award are supported by substantial evidence. If so, the record is reviewed to determine if the findings and award, even though supported by some competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence that was before the commission. *See Davis v. Research Medical Center,* 903 S.W.2d 557, 565 (Mo.App.1995).

In other words, the factual findings and resulting award of the Commission should be set aside on appeal if they are not supported by competent and substantial evidence *or,* even if supported by such evidence, if they are clearly contrary to the overwhelming weight of the evidence. Otherwise, the Commission's award is to be affirmed.

*Id.*

■ Based on the hospital laboratory report and Dr. Wittmer's hospital admission report, the commission found there was "a reasonable probability that claimant's injuries were sustained in conjunction with the use of alcohol." It found, however, that Reliable failed to prove claimant had actual knowledge of its "alcohol policy," and that Reliable had not posted that policy in a conspicuous place as required by § 287.120.6(1).[1]

Reliable argues:

[T]he evidence clearly established that [claimant] was intoxicated at the time of the tragic accident, and he produced no evidence whatsoever regarding his activities in the approximately three hour period immediately preceding the accident. The only inference to be drawn from his level of intoxication at the time of the accident is that he was not engaged in Reliable Chevrolet's business either in the period immediately preceding, or at the time of, the accident.

Reliable contends, therefore, that claimant failed to satisfy the requirement of § 287.120.1 that an injury, to be compensable, must both arise out of and have been incurred in the course of employment.

The commission adopted the findings of the administrative law judge with regard to whether claimant was engaged in the pursuit of Reliable's business at the time of the accident. Those findings state:

    After carefully reviewing all of the evidence, I find that claimant sustained an accident that arose out of the course and scope of employment. While no one has been able to determine exactly what claimant was doing on Highway 160 at the time

---

1.  References to statutes are to RSMo 1994.

of the accident, it is very probable that claimant was performing his work duties at the time of the accident. The accident occurred at 3:00 p.m., well within his normal work day. He often would be out of the office on business matters. The accident happened while claimant was on a direct route within about 1/2 mile of the employer. It was completely out of character for claimant to go about personal matters during the work day.

Even if claimant has not been able to present evidence of the exact nature of his activities, this is still a compensable accident. While traveling to and from work is ordinarily not compensable, the Court of Appeals found that a car salesman driving a demonstrator "falls outside the ordinary scenario," *Hill v. Royal Gate Dodge,* 887 S.W.2d 640, 641 (Mo.App. E.D.1994). In the *Hill* case the employer's general manager testified that the employee was allowed to use the demonstrator for personal errands such as picking up groceries. *Id.* at 641. Ted Coy, employer's general manager in this case testified to exactly the same thing. He said that claimant had the approval of the employer to drive the car and could use it for all of his driving needs, including personal matters.

This court agrees that *Hill* supports the commission's award. Another similar case is *Reece v. Neal Chevrolet & Universal Underwriters Ins. Co.,* 912 S.W.2d 599 (Mo.App. 1995). In *Reece,* like in *Hill,* an automobile dealer's employee was provided use of a car. The employee in *Reece* was a service manager who was killed in an automobile accident while traveling from work to his residence. The employee was driving the car provided by his employer when the accident occurred.

The commission found that the death was the result of a compensable accident, finding that the employer had an established practice of allowing its managers and salespeople to drive company cars to and from work and business meetings and that the employer received a benefit from having its managers drive Chevrolet automobiles. The Eastern District of this court affirmed concluding, "Thus, because Neal established a practice of providing cars to management, controlled de-

cedent's company car through use and driver restrictions, and benefitted from its use by decedent, the Commission did not err in awarding death benefits to claimants." *Reece,* 912 S.W.2d at 602.

Putting aside the issue of this claimant's ingestion of alcohol, the facts of this case are stronger than those in *Hill* and in *Reece.* The agreements between Hill and his employer and Reece and his employer were more limited with respect to the permissive use of the automobiles they were provided than was the agreement between claimant and Reliable. Hill's agreement required him to "store the automobile at his home during evenings and off hours." 887 S.W.2d at 641. The accident occurred on his way home from work. The court, in affirming the award of the commission, observed, "To state the obvious, in order to store the car at his home, employee had to drive it there." *Id.*

Reece's use of his employer's automobile was not based on a written agreement, but was based on an established company policy. The evidence was that the employer "allowed its managers and salespeople to drive the company cars to and from work and business meetings." 912 S.W.2d at 602. It was conceded that the employer derived a benefit from this practice.

The evidence in this case does not reveal that any restrictions were placed on claimant's use of company cars other than use for family vacations. Claimant's agreement required him "to drive a make of automobile sold by the employer,...." It states, "The automobile is our showroom on wheels and the employee should strive for high visibility of the automobile to help advertise the employer's product." Reliable's expectation that claimant would use the car assigned him extensively is evidenced by a requirement that he was responsible "to change oil, filter, and lub [sic] on assigned demonstrator at 3000 and 6000 miles."

The commission's finding that Reliable's business interests were served, consistent with the agreement between it and claimant, by claimant's use of his company car is supported by the evidence. Parts B and C of Reliable's point on appeal are denied.

■ Reliable argues, however, that the evidence of alcohol consumption by claimant distinguishes this case from others involving accidents by employees of automobile dealerships using company cars. Reliable contends claimant's blood alcohol level of 0.186% required a determination that his accident did not arise out of or occur in the course of his employment.

■ Apart from statutory limitations on recovery of benefits based on § 287.120.6, which the commission found not applicable and Reliable does not contest, an employee is not prohibited from recovering by reason of alcohol consumption unless he is "intoxicated to the point where his mind is a 'total blank' due to intoxication." *Gee v. Bell Pest Control,* 795 S.W.2d 532, 536–37 (Mo.App.1990). For an employee's intoxication to be a defense to a worker's compensation claim it must be shown "that the employee was intoxicated to such an extent that it was impossible for him to physically and mentally engage in his employment." *Swillum v. Empire Gas Transport, Inc.,* 698 S.W.2d 921, 924–25 (Mo. App.1985).

In this case the only evidence of intoxication was the hospital laboratory report and the statement on the hospital admission report of Dr. Wittmer's impression of "[a]lcohol intoxication," an impression inferably based on the laboratory report.

The deputy sheriff who witnessed the accident testified that he observed no indication of intoxication. He testified that based on his observation of claimant inside the vehicle and otherwise, it was his opinion that claimant was not intoxicated. He explained, "[T]he main way that I would be able to tell is, Number 1, I don't see personally how he reacted the way he did to avoid hitting the car. You would have had to been there to see it and how quick it took place. But I was, like I said, amazed that he did not hit that car."

There were no signs of intoxicants in the vehicle. There was no smell of alcohol about claimant's person when paramedics removed claimant from his car. Likewise, a highway patrolman who investigated the accident stated that his investigation did not reveal anything that would lead him to conclude drinking was a factor. The patrolman's report stated that alcohol was not involved.

■ The laboratory report of a blood alcohol content of 0.186% is not sufficient, under the facts of this case, to support Reliable's claim that claimant's accident did not arise out of or occur in the course of his employment. "The law in the area of intoxication defense has consistently held that mere evidence of a high blood alcohol content is insufficient to support a denial of a claim on the basis of intoxication." *Gee,* 795 S.W.2d at 536. Whether an employee was intoxicated to such an extent that he could not be engaged in furthering his employer's business at the time of an injury is a question of fact to be determined by the commission. *Swillum,* 698 S.W.2d at 925.

The laboratory report stated claimant's alcohol content was 0.186%. In *Gee* the employee's blood alcohol content was 0.25%. In *Swillum* it was 0.17%. (*Compare McClendon v. Mid City Discount Drugs,* 870 S.W.2d 456, 457 (Mo.App.1994), in which an employee with a history of alcoholism who had a blood alcohol content of 0.42% was found not to have been engaged in furthering his employer's business when an accident occurred—he had also been observed sleeping in a back room at his place of work before the accident.) Reliable's claim that the evidence that defendant had ingested alcohol required a finding that he could not have been engaged in furthering its employment when the accident occurred is denied.

The findings of the commission are supported by competent and substantial evidence. They are not contrary to the overwhelming weight of the evidence. The award is affirmed.

MONTGOMERY, C.J., and CROW, P.J., concur.