Steve REESE, Claimant–Respondent,

v.

Kevin COLEMAN, d/b/a Immaculate Contracting Services, Appellant.

No. 22567.

Missouri Court of Appeals,
Southern District,
Division One.

April 7, 1999.

196

Jack Hoke, Springfield, for appellant.

Jerry A. Harmison, Daniel R. Wichmer, Miller & Sanford, P.C., for respondent.

JOHN E. PARRISH, Judge.

Kevin Coleman, d/b/a Immaculate Contracting Services (ICS),[1] appeals an award by the Labor and Industrial Relations Commission (the commission) of workers' compensation benefits to Steve Reese (claimant). This court affirms in part; reverses in part and remands with directions.

Appellate review of an award of workers' compensation benefits by the commission is a two-step process.

> The record is examined, considering the evidence adduced together with all reasonable inferences that may be drawn therefrom in the light most favorable to the findings and award, to determine if the findings and award are supported by substantial evidence. If so, the record is reviewed to determine if the findings and award, even though supported by some competent and substantial evidence, were nevertheless clearly contrary to the overwhelming weight of the evidence that was before the commission.

*Bridges v. Reliable Chevrolet, Inc.,* 940 S.W.2d 51, 53 (Mo.App.1997). The commission judges credibility of witnesses.

---

**1.** Mr. Coleman and ICS are referred to interchangeably in this opinion. Either name is intended to refer to appellant.

*Pendergrass v. Killian Const. Co.,* 891 S.W.2d 166, 167 (Mo.App.1995).

◼ The commission affirmed and adopted the award and decision of the Administrative Law Judge. The Administrative Law Judge's award and decision was incorporated in and made part of the commission's award.[2] It is based on the following facts.

Claimant was employed by ICS. On October 8, 1994, his responsibilities included performing janitorial work at three facilities in Springfield, Missouri, a U.S. Post Office facility on Jefferson Street, the Chinese Chef Restaurant on South Campbell Avenue, and a U.S. Post Office annex on South Campbell.

Claimant had completed his work at the U.S. Post Office on Jefferson. He went to the restaurant where he cleaned the restroom area and the dining area. He swept the floor in the kitchen. He was preparing to mop the floors by putting chemicals in a bucket of water. As he filled the bucket, he spilled a liquid chemical, a heavy degreaser, into his right shoe. About 10 minutes later his right foot began to burn and feel too tight for his shoe. He finished his work at the restaurant and, before leaving, took off his shoe and sock. He saw what he described as a "big black spot" on his foot where he had spilled the chemical. He put his sock and shoe back on and went to the post office annex. It was located about 9 blocks from the restaurant.

Claimant's foot continued hurting. He showed a man and woman at the post office annex the burn on his foot, then paged Mr. Coleman by telephone. Mr. Coleman returned claimant's call and learned that claimant had sustained a burn and could not complete work at the post office annex.

Claimant went to a hospital emergency room. The wound on his foot was cleansed and a dressing was applied. Claimant received a tetanus shot. A physician who diagnosed a "[m]ild secondary degree burn from chemical burns of the right ankle" examined him. Tylenol No. 3 was prescribed for pain. A follow-up examination was scheduled for October 9.

Claimant returned to the emergency room October 9. His wound was soaked and scrubbed with Hibiclens and saline. Whirlpool treatments were prescribed. They were to be followed by burn dressings with Silvadene. Claimant was excused from work. Claimant was examined again October 10 after which he was referred to a surgeon, Dr. A.A. Ancheta. Claimant received whirlpool and other treatments at the hospital until October 26.

Dr. Ancheta examined claimant on October 14 and 21. Dr. Ancheta did not change the conservative treatment claimant was receiving. Claimant's employer, Mr. Coleman, accompanied claimant when he visited Dr. Ancheta. Mr. Coleman directed claimant to consult Dr. Vincent A. Previti for a second opinion.

Claimant consulted Dr. Previti. Mr. Coleman accompanied claimant on his visit to Dr. Previti. Dr. Previti suggested a skin graft. Mr. Coleman then wanted claimant to consult Dr. Paff.

On October 26, 1994, claimant was examined by Dr. Paff. Mr. Coleman accompanied claimant and sat in on the examination. Claimant provided Dr. Paff with a history of the incident that produced his injury. Mr. Coleman was present when this occurred. The history that appears in claimant's records from Dr. Paff's office is consistent with the facts as found by the commission. Dr. Paff did not believe a skin graft was required. He expressed the opinion that claimant should continue with the conservative treatment that had

---

**2.** The award of the commission is what is reviewed on appeal. When the commission's findings include the administrative law judge's award by incorporation by reference, it is reviewed as part of the commission's decision. *Williams v. City of Ava,* 982 S.W.2d 307, 310 (Mo.App.1998).

been prescribed. However, he sought a consultation from Dr. Gaska. Dr. Gaska examined plaintiff. Dr. Gaska did not recommend that claimant continue with the treatments he had been receiving.

Claimant's treatment was managed by Dr. Paff from October 26, 1994, through January 25, 1995. Dr. Paff provided ICS with reports to the employer during that time. Those reports identified claimant's injury as being work-related. Dr. Paff submitted billings to ICS for the medical care he provided claimant. Dr. Paff dismissed claimant from his care on January 25. Dr. Paff was prepared to issue a disability rating at that time but was advised by Mr. Coleman not to issue a rating. On that date, Mr. Coleman advised Dr. Paff he was denying liability.

ICS was ordered to pay medical expenses in the amount of $1,593.05, permanent partial disability compensation of $2,325.00 representing 23.25 weeks at the compensation rate of $100.00 per week. ICS was found to have unreasonably refused to provide necessary medical care and disability compensation and ordered to pay an additional $1,636.47 for costs and attorney fees.

■ ICS's first point on appeal asserts that the commission's award in favor of claimant is "clearly contrary to the overwhelming weight of the evidence because all of the evidence in the record and the testimony of [the witnesses for ICS] clearly and unequivoqally [sic] shows that the claimant could not have sustained the injury alleged at the time and in the manner alleged...."

Kevin Coleman testified that claimant told him his injury was sustained at home when claimant and his wife were making tamales; that it was caused by a grease spill. Mr. Coleman also testified that on the day of the injury claimant had not been assigned to clean the restaurant where claimant reported the injury occurred. However, Mr. Coleman had no business records that reflected what employee was assigned to clean the restaurant on the day of the injury. One other witness, a former employee of ICS and a friend of Mr. Coleman, testified he had responsibility for cleaning the restaurant the day of the injury and had cleaned the restaurant on that date. Another witness, a post office employee, testified that claimant showed her the burn he sustained. She testified concerning whether he was wearing two tennis shoes the day when the injury was supposed to have occurred, or one shoe and a sock or slipper on the foot that was injured. She also testified that she was uncertain what day or days she saw claimant wearing one shoe and a slipper on the other foot rather than two shoes; whether it was on the day claimant reported his injury occurred or on a later day when he was working at the post office.

The administrative law judge addressed the testimony of ICS's witnesses in the findings and conclusions that were adopted by the commission and made part of its award:

> The employer [i.e., Mr. Coleman], however, implicitly suggests that the claimant is perpetrating a fraud in asserting he sustained a work-related injury on October 8, 1994. The employer contends that [claimant] did not provide any janitorial service at Chinese Chef on October 8, 1994, and supports his testimony with that of Mr. Dodge. Further, the employer indicates that the burn experienced by [claimant] occurred while he was cooking tamales with his wife at home. The employer does not offer any proof of this latter allegation independent of his own testimony.

> Also, the employer offered the testimony [of the post office employee] in seeking to contradict the testimony of [claimant]. Yet, I find the testimony of [her] as being equally if not more supportive of [claimant].

> Accordingly, I am unable to reconcile the differences between the testimonies of Chris Dodge and Kevin Coleman with

the testimony of [claimant], and find in favor of the [claimant]. In light of the benefit of having personally examined and viewed the witnesses, I find the claimant, Steve Reese, to be very credible and persuasive. I accept as true the testimony of [claimant].

The findings and conclusions state that Mr. Coleman's testimony was not consistent with the medical records. It observes that Mr. Coleman told medical personnel that he was denying liability because the injury occurred at the YMCA; that Mr. Coleman made no mention of a claim that claimant suffered a grease spill while cooking tamales.

 The decision of whether to accept or reject testimony is to be made by the commission. *Pendergrass,* 891 S.W.2d at 167. The facts found by the commission are binding on this court so long as those facts are supported by substantial evidence and are not contrary to the overwhelming evidence that was before the commission. *Bridges,* 940 S.W.2d at 53. The commission may base its findings and award solely on the testimony of a claimant. *Pendergrass, supra,* at 168.

This court's review reveals no misstatement in the commission's award concerning the evidence that was adduced. The commission's award is supported by substantial evidence. It is not contrary to the overwhelming evidence the commission had before it. Point I is denied.

 Point II is directed to the commission's award to claimant of an amount for payment of attorney fees in addition to the award for disability. ICS contends the commission erred because its defense was not unreasonable and § 287.560 [3] does not permit or allow such an award.

The findings and conclusions of the administrative law judge that were adopted by the commission state, "Section 287.560,

RSMo authorizes the Division of Workers' Compensation to assess the cost of proceedings upon a party who brings, prosecutes, or defends a claim without reasonable ground." The commission found that claimant was required to secure the services of an attorney in order to receive the benefits to which he was entitled under the Workers' Compensation Law. The findings and conclusions state, "Notably, the employer refused to pay for much of the treatment he directed and scheduled for the claimant, and disregarded the opinions of the physicians he selected. Further, the employer, while engaging in business without insurance, unreasonably refused to provide the requisite medical care and disability compensation." The award included $979.52 for attorney fees "incurred as a result of [ICS] unreasonably refusing to provide the requisite medical care and disability compensation."

The applicable part of § 287.560 states:

The division, any administrative law judge thereof or the commission, shall have power to issue process, subpoena witnesses, administer oaths, examine books and papers, and require the production thereof, and to cause the deposition of any witness to be taken and the costs thereof paid as other costs under this chapter. [ [4] ] ... All costs under this section shall be approved by the division and paid out of the state treasury from the fund for the support of the Missouri division of workers' compensation; *provided, however, that if the division or the commission determines that any proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who* brought, prosecuted or *defended them.* [Emphasis added.]

3. References to statutes are to RSMo 1994.

4. The "division" is the division of workers' compensation of the Department of Labor and Industrial Relations of the State of Mis-

souri. § 287.020.9. The "commission" is the Labor and Industrial Relations Commission of Missouri. § 287.020.8.

The question presented is whether "cost of the proceedings," as that term appears in § 287.560, includes a claimant's attorney fees. The parties have cited no case that has addressed this issue nor has this court's independent research disclosed such a case. The Western District of this court, however, in remanding a case for determination of costs, has suggested, "While there are no reported cases under Section 287.560 directing the Commission how to determine these costs, it may be guided by the reference in other portions of Section 287.560 to costs of depositions, transcripts, subpoenas, and the like. It may also be guided by the costs available in civil actions under Section 514.060 and by its own past practice in this regard." *Stillwell v. Universal Const. Co.*, 922 S.W.2d 448, 457 (Mo.App.1996).

The text of § 287.560 does not refer to attorney fees. It does identify other items for which expenses are customarily incurred in connection with trials and other evidentiary hearings. The statute identifies the need for and permits issuance of process, subpoenas for witnesses, and depositions of witnesses. It provides for witnesses to "receive the fees and mileage prescribed by law in civil cases," for subpoenas to "be served as in civil actions in the circuit court," and for costs of service to "be as in other civil actions."

Section 514.060, to which *Stillwell* alludes, permits costs to be recovered by prevailing parties in civil actions, but does not identify what those costs include. The courts have addressed the question of whether civil costs include attorney fees. As explained in *Architectural Resources, Inc. v. Rakey*, 912 S.W.2d 676 (Mo.App. 1995):

> Missouri courts have historically adhered to the "American rule" that with certain exceptions, litigants bear the expense of their own attorney fees, *Brown v. Mercantile Bank of Poplar Bluff*, 820 S.W.2d 327, 340[23] (Mo.App.1991), and of paying the fees of the experts needed to make their case. *See Anderson v.*

*Howald*, 897 S.W.2d 176, 181[9] (Mo. App.1995) (quoting *Nichols v. Bossert*, 727 S.W.2d 211, 213–14[3] (Mo.App. 1987)). *See Mo. Damages*, § 19.2 (Mo. Bar 1988). Two of the more common exceptions to this rule fit into these categories: recovery of fees pursuant to contract and recovery of an item of damages to a wronged party involved in collateral litigation. *Brown*, 820 S.W.2d at 340[22].

. . .

Costs were unknown to common law and statutory provisions allowing them are strictly construed. *In re Thomasson*, 159 S.W.2d 626, 628[4] (Mo.1942). Consequently, a litigant bears a heavy burden to show cause for departure from the usual and customary rule that each party must bear his or her own expenses of litigation. *Brown v. McIBS, Inc.*, 722 S.W.2d 337, 342[7] (Mo.App. 1986). An item is not taxable as costs unless it is specifically authorized by statute, or by agreement of the parties. *Groves v. State Farm Mutual Automobile Insurance Company*, 540 S.W.2d 39, 44[9] (Mo.banc 1976).

*Id.* at 678–79.

Claimant argues that *P.M. v. Metromedia Steakhouses Co., Inc.*, 931 S.W.2d 846 (Mo.App.1996), is authority for holding that the provision of § 287.560 that permits recovery of costs should include attorney fees. *P.M.* was an appeal of an employee's claim that compensation payments she had been receiving had been wrongly terminated. It was a proceeding brought under § 287.203. The commission found for the employee and included payment of her attorney fees in the "cost of recovery" it awarded to her as the prevailing party.

The employer in *P.M.* contended the phrase "cost of recovery" in § 287.203 did not include attorney fees. The court held the phrase "contemplates an award of attorney's fees on its face, since legal fees are unquestionably the largest cost in-

curred when an employee is forced to sue to recover a Worker's Compensation award." 931 S.W.2d at 849.

This court is not convinced that the reasoning in *P.M.* is applicable in this case. Obviously, the statute that was interpreted in *P.M.* is not the statute that controls here. The language in the two statutes concerning what is recoverable differs. Section 287.203 permits recovery of a claimant's "cost of recovery," whereas § 287.560, the statute applicable in this case, permits assessment to a party who has proceeded in bad faith of the "cost of the proceedings." Had the legislature intended to permit the commission to award recovery of the same items in both circumstances, it could have used the same language in the two statutes. It did not.

Section 287.560 addresses payment of costs identified "under this section." It provides that those costs that the division approves are to be paid "out of the state treasury from the fund for the support of the Missouri division of workers' compensation." It is inconceivable that this was intended to include payment of one of the party's attorney fees. Yet the language on which the commission relied in ordering ICS to pay claimant's attorney fees, *viz.*, "that if the division or the commission determines that any proceedings have been ... defended without reasonable ground, it may assess the whole *cost of the proceedings* upon the party who so ... defended them," is part of the same sentence. [Emphasis added.]

 The commission may act only in accordance with applicable statutes. *Hunt v. Laclede Gas Co.*, 869 S.W.2d 770, 773 (Mo.App.1993). It can order payments only as provided by those statutes. This court holds that § 287.560 does not permit the commission to order payment of an opposing party's attorney fees as a "cost of the proceeding."

The only payment Point II challenges is claimant's attorney fees. Having concluded that § 287.560 does not permit the com-

mission to order payment of attorney fees, this court need not address the claim that ICS's defense of the claimant's claim was not reasonable. Point II is granted.

The part of the award directing payment of claimant's attorney fees in the amount of $979.52 is set aside. In all other respects the award is affirmed. The case is remanded with directions that the commission enter a final award for compensation of an amount consistent with this opinion.

PREWITT, P.J., and CROW, J., concur.