Denise BRIDGES, et ux, Plaintiff–
Respondent,

v.

VAN ENTERPRISES d/b/a Reliable
Chevrolet, Intervenor–
Appellant,

LDCC, Inc., and William Duplisse,
Defendants.

No. 22261.

Missouri Court of Appeals,
Southern District,
Division One.

April 27, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 19, 1999.

Application to Transfer Denied
June 29, 1999.

Raymond E. Whiteaker, Whiteaker & Wilson, P.C., Springfield, for appellant.

Lincoln J. Knauer, Bryan O. Wade, Hush & Eppenberger, LLC, Springfield, for Bridges.

JOHN E. PARRISH, Judge.

Van Enterprises d/b/a Reliable Chevrolet (Reliable) appeals a judgment allocating proceeds from settlement of a three-count negligence action. The case arose from an automobile accident involving cars driven by Alfred M. Bridges and William Duplisse, an employee of LDCC, Inc. It was brought by Denise Bridges, surviving spouse of Alfred M. Bridges, individually, and as next friend for Aaron Bridges and personal representative of the Estate of Alfred M. Bridges, against LDCC, Inc., and William Duplisse. Reliable intervened to enforce subrogation rights granted by § 287.150.[1]

---

1. References to statutes are to RSMo 1994.

Count I sought damages for personal injuries Mr. Bridges sustained and medical expenses he incurred during his lifetime as a result of the automobile accident. Mrs. Bridges brought Count I in her capacity as personal representative of the Estate of Alfred M. Bridges. Count II was Mrs. Bridges' individual action for loss of consortium. It was for damages she sustained from the date of the accident until the date of Mr. Bridges' death. Count III was an action for wrongful death brought by Mrs. Bridges, individually, and as next friend of her and Mr. Bridges' minor child, Aaron Bridges.

Mr. Bridges was an employee of Reliable when the accident in which he was injured occurred. The Workers' Compensation Law covered his injuries. *See Bridges v. Reliable Chevrolet, Inc.,* 940 S.W.2d 51 (Mo.App.1997). He was awarded total disability compensation. *Id.* at 52.

Section 287.150 states, in applicable part:

1. Where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person, and the recovery by such employer shall not be limited to the amount payable as compensation to such employee or dependents, but such employer may recover any amount which such employee or his dependents would have been entitled to recover. Any recovery by the employer against such third person shall be apportioned between the employer and employee or his dependents using the provisions of subsections 2 and 3 of this section.

2. When a third person is liable for the death of an employee and compensation is paid or payable under this chapter, and recovery is had by a dependent under this chapter either by judgment or settlement for the wrongful death of the employee, the employer shall receive or have credit for sums paid or payable under this chapter to any of the dependents of the deceased employee to the extent of the settlement or recovery by such dependents for the wrongful death. . . .

3. Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, . . . .

The trial court approved a settlement in the amount of $250,000. Attorney fees and expenses of $71,800 were paid. The trial court apportioned $178,000 as follows: [2]

| | |
|---|---|
| Mrs. Bridges' pre-death consortium claim (Count II) | $166,000 |
| Claim of the Estate of Alfred M. Bridges (Count I) | 10,000 |
| Wrongful death claim (Count III) | 2,000 |

The trial court held that Reliable was estopped from exercising its subrogation rights by means of the equitable clean hands doctrine.

■ Reliable's first point on appeal contends the trial court erred in determining Mrs. Bridges' "pre-death consortium claim was separate from the damages to be apportioned in the wrongful death claim." Reliable argues this was an erroneous declaration and application of law that "circumvent[ed] the provisions of § 287.150, R.S.MO."

Section 537.080 allows recovery when death occurs under circumstances that re-

2. The trial court's judgment apportioned $249,800. The record on appeal does not disclose an allocation of the remaining $200.

covery for damages would have been permitted "if death had not ensued." Section 537.090 prescribes items that may be considered in assessing damages in those instances. Those items include "the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death...." Section 537.090 further provides, "In addition, the trier of the facts may award such damages *as the deceased* may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued." (Emphasis added.)

 Reliable acknowledges that a spousal loss of consortium claim arises when the other spouse is injured; that the loss of consortium claim continues to exist even if the injured spouse settles his or her claim for personal injuries. *Shepherd v. Consumers Cooperative Assoc.*, 384 S.W.2d 635, 640 (Mo. banc 1964). The consortium claim survives independently of the injured spouse's claim. *Maddox v. Truman Medical Center, Inc.*, 727 S.W.2d 152, 154 (Mo.App.1987). Reliable argues, nevertheless, that the history of the wrongful death statutes, particularly § 537.090, supports the position that a spouse's pre-death consortium claim becomes part of a continuing consortium claim following death; that no action can be maintained for the pre-death claim separate from a wrongful death action. It bases that argument on the fact that § 537.090 was amended in 1979 to allow claims for various items including loss of services, consortium, companionship, comfort, etc.

Reliable further contends that to allow a spouse to bring simultaneous, separate claims for pre-death consortium and wrongful death that includes consortium amounts to splitting causes of action; that

it is not permissible for that reason. Reliable contends this would result in double recovery.

The fallacy in Reliable's assertion lies in explicit language of § 537.090 that permits recovery for "death and loss thus occasioned." Pre-death loss of consortium could not be occasioned by the injured spouse's death. The statute permits recovery for damages *the deceased* may have suffered between the time of injury and the date of death for which that person could have maintained an action had he or she survived, but does not provide for recovery of losses incurred by others during that period.

 Section 1.090 requires words in statutes to be "taken in their plain or ordinary and usual sense." That, coupled with the rule of statutory construction that express mention of one thing implies the exclusion of another, *see Brown v. Morris*, 365 Mo. 946, 290 S.W.2d 160, 166 (banc 1956), runs afoul of Reliable's claim in Point I. Had the legislature intended to merge damages for loss of consortium prior to death of a spouse with damages for loss of consortium following death in the provisions of § 537.090, it could have said so. Mindful that "[t]he court should regard the statute as meaning what it says," failure to include pre-death consortium damages as an item of damages recoverable in a wrongful death action speaks loudly. *Emery v. Wal–Mart Stores, Inc.*, 976 S.W.2d 439, 449 (Mo. banc 1998). " 'Any legislative intent to foreclose ... traditional judicial activity should require positive expression.' " *O'Grady v. Brown*, 654 S.W.2d 904, 911 (Mo. banc 1983), *quoting Justus v. Atchison*, 19 Cal.3d 564, 139 Cal.Rptr. 97, 104, 565 P.2d 122, 129 (1977).

 When a spouse dies as a result of negligence of a third party, a loss of consortium claim allows recovery of damages for services calculated to the time of the injured spouse's death. *See* Restatement (Second) of Torts § 693 comment f (1977).[3]

---

**3.** Comment f includes the statement:

In case of death resulting to the impaired

*See also Novelli v. Johns–Manville Corp.,* 395 Pa.Super. 144, 576 A.2d 1085, 1087 (1990). Damages in a wrongful death action arise from "a distinct and different wrong." Harper, James and Gray, *The Law of Torts* § 8.9 at 553–54 (2d ed.1986). Section 537.090 does not include damages incurred by a surviving spouse for loss of consortium after injury but prior to death.

■■■ As to Reliable's argument that recovery by Mrs. Bridges for pre-death loss of consortium independent of the wrongful death claim amounts to splitting a cause of action:

> The test for determining whether or not a cause of action is single, and cannot be split, is: (1) whether the separate actions brought arise out of the same act, contract, or transaction, (2) or whether the parties, subject matter, and evidence necessary to sustain the claim are the same in both actions.

*State ex rel. Todd v. Romines,* 806 S.W.2d 690, 692 (Mo.App.1991). A claimant may bring separate and distinct causes of action even though they arise out of the same transaction. *Id.*

There are different parties to Mrs. Bridges' action for loss of consortium and the wrongful death action. She is the surviving spouse; thus, she is the sole plaintiff in the consortium claim. She and her son, through Mrs. Bridges as his next friend, are plaintiffs in the wrongful death action.[4]

Also, the evidence necessary to sustain Mrs. Bridges' claim for loss of consortium is different from the evidence necessary to sustain the wrongful death claim. Obviously, evidence of Mr. Bridges' death is required in the wrongful death action, as

well as evidence that his death was caused by the accident. Different evidence would also be required with respect to damages. Mr. Bridges was in a coma for 2½ years before he died. For Mrs. Bridges to prevail in her loss of consortium claim, evidence is required of her "resulting loss of the society and services" of her husband during that period. Restatement (Second) of Torts § 693(1) (1977). Proof of "the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support" of which the parties bringing the wrongful death action were "deprived by reason of such death" would require different evidence. § 537.090. Point I is denied.

■■ Point II asserts the trial court abused its discretion in apportioning damages. It argues the amounts awarded to the wrongful death and survivorship claims were grossly inadequate; that the trial court ignored testimony of Mrs. Bridges as to the effect the death of Mr. Bridges had on her. Point II contends the trial court "did not address the impact of his death on Aaron, minimized the amount of medical bills, loss of income, and other expenses, and failed to designate to whom the wrongful death proceeds were to be apportioned."

■■■ Apportionment of settlement proceeds in a wrongful death action rests within the trial court's discretion. *Kavanaugh v. Mid–Century Ins. Co.,* 937 S.W.2d 243, 246 (Mo.App.1996). An appellate court will not interfere with a trial court's apportionment of settlement proceeds in a wrongful death action unless the apportionment is grossly excessive or inadequate. *Id.*

---

spouse, the deprived spouse may recover under the rule stated in this Section only for harm to his or her interests and expense incurred between the injury and death. For any loss sustained as a result of the death of the impaired spouse, the other spouse must recover, if at all, under a wrongful death statute.

4. Separate affidavits were filed by Alfred Bridges' parents, Kathleen J. Bridges and Marvin G. Bridges, by which they acknowledged existence of a statutory claim for his wrongful death and waived their right to bring that action stating the preference "that his wife and widow, Denise Bridges, and [their] grandson, Aaron Bridges, bring any claims that they may have for Al's death."

In its judgment the trial court stated, "The [p]roceeds to be apportioned will not adequately compensate any of the claimants for the loss they have suffered." The judgment concluded, however, that its allocation was "fair and reasonable in proportion to the losses suffered by each party entitled thereto." The judgment recites:

This is a rare case in which the deceased was injured and in a deep coma for 2½ years before dying from the injuries. Thus, the loss of consortium injuries to the wife of the deceased, Denise Bridges, far outweigh any other injury. Denise Bridges' consortium claim arises from the 2½ year period during which the deceased was in a coma pre-death. The claim is independent and separate from the wrongful death claim and not subject to any subrogation lien. . . .

The judgment further explained that Mrs. Bridges received no compensation for her loss of consortium claim as part of the workers' compensation benefits paid by Reliable[5]; that there had been compelling testimony that revealed Mrs. Bridges "suffered immense loss of association type injuries for 2½ years." It emphasized that Mrs. Bridges' loss occurred "at a time when her husband's companionship, wisdom and parental help and presence were critical to their 9 year old son's growth and maturity." It revealed the physical impact the loss had on Mrs. Bridges; that she lost 60 pounds, "did not have a day free of medication," and developed a clinical depressive disorder. The trial court concluded "that the lost consortium type suffering of the deprived spouse, Denise Bridges, is not easily reduced to a monetary value, but dwarfs the monetary loss suffered by all other claimants." The judgment "value[d] this claim at $166,000.00 of the total [p]roceeds to be apportioned."

In explaining the apportionment made to the other claims, the trial court stated there was no evidence Mr. Bridges "suffered anything following the moment his head hit the dashboard in the accident that eventually caused his death." It pointed out that there was no evidence as to his life expectancy or lost wages, or the amount of any unpaid claims against his estate; that the parties stipulated that about $1,000,000 of medical bills and wages had been paid by workers' compensation insurance carriers. In evaluating the relative value of the claims, the trial court concluded that $10,000 adequately compensated the estate for its losses.

The judgment allocated the remainder of the proceeds, $2,000, to the wrongful death claimants.[6] It concluded that testimony confirmed Mr. Bridges' death could be characterized as "a relief rather than an injurious event" under the circumstances of the case; that, nevertheless, expenses had been incurred with respect to funeral requirements and winding up the deceased's affairs.

The testimony set forth in the transcript supports the trial court's conclusions with respect to the effect Mr. Bridges' condition had on Mrs. Bridges' life for 2½ years after the accident until the time of his death. In addition to stress resulting from Mr. Bridges' condition and Mrs. Bridges' perceived obligation to be at his bedside and complications in rearing a 9 year-old boy, her life was complicated because she was forced to leave the part-time employment she had at the time of her husband's accident. She experienced financial problems, having received no income for more than six months. She experienced stress from ongoing litigation as a result of Mr. Bridges' employer contesting her husband's workers' compensation claim. Her physical condition required surgery for endometriosis, a herniated disk and bone

---

**5.** *See Flanigan v. Dept. of Labor and Industries*, 65 Wash.App. 119, 827 P.2d 1082, 1085 (1992), that held a spouse's claim for loss of consortium is not required to be part of an injured employee's workers' compensation

claim, but can be separate and individual to the spouse.

**6.** However, see n. 2 *supra*.

spurs. She experienced chronic headaches. There was testimony from a psychologist that the stress endured when a loved one is in a coma greatly outweighs the stress endured due to death of a loved one. Based on the extraordinary circumstances of this case, this court does not find the trial court's allocation of proceeds of the judgment was an abuse of discretion.

Reliable further contends in Point II that the trial court erred in not designating to whom the wrongful death proceeds were to be paid. Reliable points to the language of § 537.090 that "the trier of the facts may give to the party or parties entitled thereto" such damages as it may award. The trial court would have been well served to clarify this issue in its judgment. As will be disclosed later in this opinion, this case will be remanded for further action by the trial court. The designation of parties receiving proceeds allocated to Counts I and III can be addressed on remand.

To the extent Point II asserts error in apportioning the proceeds of the judgment among the three counts in the amended petition, it is denied. The allegation of error that the trial court should have identified the persons to whom the funds allocated to the wrongful death claim were to be paid is well taken and Point II is granted in that regard.

Points III and IV are directed to the trial court's holding that Reliable was precluded from exercising their subrogation rights, as provided in § 287.150.1, to any of the settlement proceeds. The trial court held Reliable was not entitled to reimbursement for any of its subrogation claim because "[p]arties seeking to exercise a right in equity must come into court with clean hands." It found "[Reliable] did not, for they provided false testimony and a fraudulent document to the [Labor and Industrial Relations] Commission, in an attempt to avoid their obligations to the deceased, Al Bridges, in the very same matter in which they now seek the benefit of an equitable subrogation remedy." The judgment states, "The administrative law judge considering the [workers' compensation] case so found and the Commission adopted that finding. This court independently heard the evidence and reached the same conclusion." [7]

The trial court concluded that the matter of subrogation in employment security cases is equitable in nature; that, therefore, the "clean hands doctrine" could be applied to deny Reliable recovery on its subrogation claim. The trial court denied Reliable recovery on that basis stating:

> Public policy also requires that intervenors must not be allowed to escape the consequences of their acts, for fear of encouraging other employers similarly situate to make the same choice in the thought that if the fraud succeeds, they avoid their obligations to their employees; and if the fraud does not succeed, they nevertheless enjoy their right to subrogation.

Point III asserts the trial court erred in holding Reliable could not recover on the subrogation claim; that the trial court "had no jurisdiction over the subject matter" because it is part of the workers' compensation law; that "the Division of Workers' Compensation has exclusive jurisdiction over cases involving the application and interpretation of the Workers' Compensation Act, including the determination of an employer's subrogation interest in a wrongful death action."

Point IV asserts the trial court erred in applying the "clean hands doctrine" because the doctrine does not apply in that the subrogation right is created by statute and its application is mandatory.

---

**7.** There was evidence that an employee of Reliable provided false testimony in the workers' compensation hearing concerning notice to Mr. Bridges of a policy change regarding consumption of alcohol during hours of employment. This was alluded to in *Bridges v. Reliable Chevrolet, Inc.,* 940 S.W.2d at 53.

It asserts that even if the doctrine can be applied by the courts in workers' compensation cases, it does not apply in this case because the employee who provided false testimony provided correct testimony to the trial court and explained the reason for his earlier misstatement. Point IV further claims that even if the doctrine were applicable, it would not prevent Reliable from recovering in this case because "plaintiffs can show no prejudice."

This court holds that the trial court erred in concluding the "clean hands doctrine" applied to deny Reliable subrogation rights. Reliable's assertion in Point IV that subrogation rights under § 287.150 are mandatory is well taken. Point III need not be addressed.

In *Akers v. Warson Garden Apartments*, 961 S.W.2d 50 (Mo.banc 1998), an employee received fatal injuries in a chemical fire. His employer's violation of Missouri safety standards contributed to the cause of the fire. The commission penalized the employer as permitted by § 287.120.4, but denied an assertion by the claimants in the case (the employee's children) that the employer's conduct resulted in the employer forfeiting its statutory subrogation rights. The claimants in *Akers* contended (as do respondents in this case) that it was inequitable to permit the employer to be subrogated to recovery rights because of the employer's egregious conduct. The court disagreed in view of § 287.150, saying:

> Claimants next contend that it is inequitable for Employer to be entitled to subrogate the compensation awarded because it violated Missouri safety statutes. Section 287.150 governs subrogation rights of employers. This section has no provision that an Employer forfeits it [sic] subrogation rights because of its fault or specific violations of state safety statutes.

*Id.* at 55.

In *Akers*, the court, relying on *General Box Co. v. Missouri Utilities Co.*, 331 Mo. 845, 55 S.W.2d 442 (1932), observed that "the 'sole test' of a third party's liability to the subrogated employer is the liability of the third party to the injured employee or dependents." 961 S.W.2d at 56. The court explained the purpose of the subrogation statute and what it was intended to accomplish:

> The purpose of the subrogation statute is to protect and benefit the employer liable for compensation, and the statute is designed to afford indemnity for compensation payable by the employer. *McCormack v. Stewart Enterprises, Inc.*, 916 S.W.2d 219, 224 (Mo.App.1995). The statute prevents an employee from receiving a double recovery, which has been referred to as an " 'evil to be avoided.' " *Id.* (citation omitted).

*Id.*

As stated in *Clingan v. Carthage Ice & Cold Storage Co.*, 223 Mo.App. 1064, 25 S.W.2d 1084 (1930):

> [T]he intent and purpose of the [Workers' Compensation Law] shall not be frustrated by interpolating, by construction, provisions which are not written therein that will affect the rights of the parties.

25 S.W.2d at 1085.

Although this case does not involve conduct by Reliable in violation of state safety statutes, this court finds the rationale of *Akers* applicable to the facts in this case. The trial court erred in concluding Reliable's statutory subrogation right was abrogated by its employee's wrongful conduct in providing false testimony in the workers' compensation hearing. The denial of Reliable's subrogation proceeds allocated to Counts I and III was error. Point IV is granted.

The judgment is affirmed as to the apportionment of the settlement proceeds among Counts I, II and III, provided, however, that on remand the trial court shall include the $200 not previously allocated with the proceeds of such count it determines to be proper. *See* n. 2. The

judgment is reversed and remanded as to Counts I and III with directions to enforce Reliable's subrogation rights pursuant to § 287.150.1 with respect to settlement proceeds apportioned to Counts I and III.

PREWITT, P.J., and CROW, J., concur.