**HEALTHNET, INC., Appellant,**

v.

**THE PLEASANT HILL BANK, Fidelity & Deposit Company Of Maryland Insurer and Jo Ann Harris, Respondents.**

**No. WD 57205.**

Missouri Court of Appeals, Western District.

May 2, 2000.

Douglas S. Laird, Kansas City, for appellant.

Patrick E. White, Thomas Stein, Kansas City, for Respondents.

Before JOSEPH M. ELLIS, Presiding Judge, PAUL M. SPINDEN, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Judge.

Jo Ann Harris was employed as Assistant Cashier at Pleasant Hill Bank in Pleasant Hill, Missouri (Pleasant Hill). At that time, Harris was the sole person responsible for safety deposit boxes at Pleasant Hill. On May 21, 1997, Harris was injured in an automobile accident while riding in a vehicle driven by her supervisor, Mary Ledwidge. Ledwidge and Harris were en route to a dinner meeting sponsored by the Kansas City Safety Deposit Box Chapter involving a presentation on unclaimed property in bank safety deposit boxes. The bank paid for Harris's attendance at the meeting. As a result of

the accident, Harris incurred medical bills in excess of $400,000.

Pleasant Hill filed a Report of Injury with the Missouri Department of Labor and Industrial Relations Division of Workers' Compensation for Harris's injury. The report stated that Harris was "Going to a Safety Deposit Meeting" when the accident occurred. Fidelity and Deposit Company of Maryland (Fidelity) was the Workers' Compensation insurance carrier for Pleasant Hill. Appellant HealthNet, Inc. apparently provided medical insurance coverage to Harris on the date of loss.[1] In a letter to HealthNet dated June 25, 1997, Fidelity advised that it was processing Harris's claim under her employer's workers' compensation policy, and would assume all responsibility for medical management and billing relating to the May 21, 1997 injury.

Harris made a claim with HealthNet for her medical bills resulting from the accident. HealthNet apparently informed Harris that it would not pay her bills unless and until she had filed a workers' compensation claim and such claim was denied. Subsequently, HealthNet apparently denied the claim on the basis that it was a workers' compensation issue, and that the bills had been incurred in violation of the HealthNet's policies and procedures.[2]

On September 19, 1997, Fidelity was advised by letter from Harris's attorney that she did not wish to make a workers' compensation claim. The letter stated, in pertinent part:

> My client has no desire to file a claim for compensation at this time. We still do not know if her injury arose out of and in the scope of her employment. I request that your company pay no benefits

---

1. Nowhere in its brief does Appellant Health-Net advise this court of the identity of its insured or its relationship to the parties. We conclude that HealthNet was Harris's health insurance carrier based upon her first amended petition for damages, filed November 5, 1997, and her attorney's letter of September 19, 1997.

2. Although HealthNet makes this assertion in its brief, there is nothing in the record to substantiate any violation of policies and procedures.

under the Missouri Workers Compensation Act at this time on account of her injury. We have asked her health insurance carrier, HealthNet, to pay her medical bills. HealthNet has denied payment of those bills. I have sued HealthNet based on that denial.

Based upon this information, Fidelity informed HealthNet that it had "received additional information which indicates that this claim is not work related," and advised that it would not be paying any of Harris's medical expenses.

On August 19, 1997, Harris filed a petition for damages in the Circuit Court of Jackson County, Missouri, against·Health-Net and Blue Cross Blue Shield of Kansas City, for refusal to pay her medical bills as a result of the May 21, 1997 accident. An amended petition was filed on November 5, 1997. HealthNet filed a motion to dismiss, citing lack of subject matter jurisdiction of the trial court to determine the workers' compensation issue, which was granted on November 16, 1998.

On November 26, 1998, Harris filed a claim for workers' compensation. An administrative hearing was held on February 4, 1999 at which Harris, her attorney, and counsel for Pleasant Hill and Fidelity appeared. Harris testified at the hearing, and medical evidence in the form of medical records and reports tending to show that Harris was permanently and totally disabled were introduced. After the hearing, the Administrative Law Judge (ALJ) entered findings of fact and rulings of law in which he found that Harris made no claim that her employer directed, sponsored or paid for the activity on May 21, 1997, nor did she allege any mutual benefit to herself or her employer from any knowledge, experience or expertise gained at the meeting. Accordingly, the ALJ, relying on *Wilson v. Monsanto Company,* 926 S.W.2d 48 (Mo.App. E.D.1996), ruled that Harris failed to meet her burden of proof to establish a compensable case within the course and scope of her employment, and denied workers compensation benefits.

In a letter to HealthNet on February 25, 1999, Harris's attorney forwarded a copy of the ALJ's decision, together with a demand for payment of her medical bills. By letter to the ALJ on March 11, 1999, counsel for HealthNet set forth its arguments in opposition to the decision, and requested that it be overturned. It then filed an Application for Review of the decision on March 13, 1999, as "Appellant/Intervenor," alleging that Harris, in collusion with Pleasant Hill and Fidelity, perpetrated a fraud by presenting testimony that the accident was not work-related. HealthNet argued that Harris' testimony in the workers' compensation hearing directly contradicted her prior testimony in the civil case, and was given for the sole purpose of obtaining a finding that the claim was not work-related. The Labor and Industrial Relations Commission issued an order dismissing the application on April 6, 1999. In its order, the Commission stated, *inter alia:* "We find nothing in the Workers' Compensation Act or in our regulations which would allow a healthcare insurer, which is not the workers' compensation carrier, to challenge an administrative law judge's award denying compensation." HealthNet brings this appeal.

In its sole point of error on appeal, HealthNet argues that the Commission erred in dismissing its application for review because the ruling of the ALJ was procured by fraud. In support of its contention, HealthNet directs our attention to § 287.495.1,[3] which authorizes parties to appeal final awards of the Commission. The statute provides, in pertinent part:

> The final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which

3. All statutory references are to RSMo (1994) unless otherwise noted.

the accident occurred or, if the accident occurred outside of this state, then in the area where the contract of employment was made...The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ *287.495.1.* In its dismissal of Health-Net's application for review, the Commission found that HealthNet did not have standing to appeal the ALJ's decision. We agree.

We note first that the very statute on which HealthNet focuses, § 287.495.1, expressly provides that only a *"party* to the dispute" may appeal. HealthNet was not a party. Undeterred, HealthNet argues that, since it is aggrieved by the final award in the workers' compensation case, it has standing to appeal the decision, and cites § 512.020 of the appellate procedure statute in support of its argument. Section 512.020 states that an appeal may be brought by "[a]ny *party to a suit* aggrieved by any judgment...." *§ 512.020* (emphasis added). HealthNet goes on to focus on its aggrieved status. However, it ignores the fact here that it was *not a party* to the workers' compensation claim. The statute does not state that *any party* aggrieved by a judgment may appeal, but rather specifies that *any party to a suit* may do so. *Id.*

HealthNet was never a party to the workers' compensation claim brought by Ms. Harris against her employer and its workers compensation carrier, nor was it entitled to participate in that proceeding. Workers' compensation is a creature of statute. *Simpson v. Saunchegrow Const.,* 965 S.W.2d 899, 903 (Mo.App. S.D.1998). In enacting the workers' compensation law, the Legislature has not deemed it appropriate to permit a health insurance provider who is not the workers' compensation carrier to be a party in a workers' compensation claim. There is simply no statutory provision which would permit HealthNet to be a party in Harris' workers compensation claim. "[T]he intent and purpose of the [Workers' Compensation Law] shall not be frustrated by interpolating, by construction, provisions which are not written therein...." *Bridges v. Van Enterprises,* 992 S.W.2d 322, 329 (Mo.App. S.D.1999).

HealthNet mistakenly focuses on the workers compensation proceeding as being the venue in which it should be allowed to litigate its potential liability to Harris. However, such is not the case under the statutory scheme of workers' compensation or the statutory and common law scheme of civil litigation. Any fraud claimed by HealthNet is a subject for redress in its defense of an action for indemnity brought by Harris. *See Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 480 (Mo.App. W.D.1992).

The Commission's dismissal of Health-Net's application for review is affirmed.

All concur.