125 F.Supp.2d 375 (2000)
RYDER INTEGRATED LOGISTICS, INC., f/k/a Ryder Dedicated, Plaintiffs,
v.
Chester G. ROYSE, Defendant.
No. 1:99CV81.
United States District Court, E.D. Missouri, Southeastern Division.
September 27, 2000.
*376 Richard G. Steele, Partner, Bradshaw and Steele, Cape Girardeau, MO, David E. Larson, Larson and Larson, P.C., Kansas City, MO, for Ryder Integrated Logistics, Inc. fka Ryder Dedicated Logistics, Inc., plaintiff.
Joe T. Buerkle, Partner, Buerkle and Beeson, Jackson, MO, for Chester G. Royse, defendant.

MEMORANDUM AND ORDER
BLANTON, United States Magistrate Judge.
In this action Ryder Integrated Logistics, Inc. is seeking to enforce a statutory Workers' Compensation lien pursuant to MO.REV.STAT. § 287.150(3) (1994). Chester Royse, who received Workers' Compensation benefits from Plaintiff, recovered from a third-party after settling a product liability *377 action against that party for work-related injuries. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by the consent of the parties under 28 U.S.C. § 636(c).
Currently pending is Plaintiff's Motion for Summary Judgment. (Document No. 19). Defendant has filed a Motion in Opposition to Plaintiff's Motion for Summary Judgment. (Doc. No. 20). In reply to Defendant's motion, Plaintiff filed Suggestions in Support of the Motion for Summary Judgment. (Doc. No. 21). Defendant in turn has filed a Memorandum in Clarification of points raised by Plaintiff in its Reply Brief. (Doc. No. 23).
Summary judgment under Rule 56, Fed. R.Civ.P., may seem a somewhat unusual vehicle for construction of a statute, since usually a motion for summary judgment is fact intensive. The parties could very well have sought declaratory relief under Rule 57. However, Rule 56(a) provides in part, "A party seeking to recover upon a claim ... or to obtain a declaratory judgment may ... move ... for a summary judgment in the party's favor upon all or any part thereof." (emphasis supplied). Summary judgment is the method chosen by the parties following a meeting pursuant to the court's Order Setting Rule 16 Conference (Document # 9) and Federal Rule 26(f), Fed.R.Civ.P. The parties filed a Joint Report to the Court (Document # 11) suggesting the use of summary judgment to seek the court's interpretation of § 287.150, RSMo. (1993), and its application to the case at bar. The court following this suggestion after a Rule 16 conference and in issuing its Interim Scheduling Plan (Document # 14). Whether the declaratory judgment procedure or that of summary judgment is followed, the effect will be the same.
The court is issuing a partial summary judgment because there remain factual issues in the case. The discrepancy between the differing amounts the parties feel is the proper subrogation interest of Plaintiff is addressed in footnote 1 below. This is a minor factual issue on which Plaintiff anticipates the parties will be able to reach agreement when documentation is supplied. In his Suggestions in Opposition to Plaintiff's Motion for Summary Judgment, Defendant states "while there are other issues, the parties have agreed to construe the statute first." (Sugg. in Opp., at 3).

Factual Background
In accordance with Local Rule 4.05, Ryder submitted a statement of uncontroverted material facts in support of its motion of summary judgment. Viewed in the light most favorable to the Defendant, the record reveals the following facts. Plaintiff is the successor corporation to Ryder Dedicated Logistics, Inc., the employer of Defendant at the time of his accident. Defendant was injured on April 4, 1995, within the scope of his employment with Plaintiff, by a forklift manufactured by Teledyne Priceton, Inc. ("Teledyne"). Workers' compensation benefits totaling $230,260.91 were paid by the Plaintiff and its insurance carrier, Ryder Services Corporation, to Defendant.
Defendant subsequently filed a products liability action against Teledyne in the United States District Court for the Eastern District of Missouri for the injuries he sustained in his work-related accident. This third party suit was settled prior to trial and under the settlement agreement entered into between the parties Mr. Royse and his wife received $535,000. After Defendant's settlement, Plaintiff filed the present action asserting its subrogation rights as a statutory lien holder over the workers' compensation benefits it paid to Defendant. Plaintiff contends in this action that its subrogation interest equals $139,061.31. Defendant argues that the value of Plaintiff's lien is only $128,255.99.[1] *378 It is agreed by the parties that the settlement document entered into between Defendant and Teledyne did not contain an express assessment of the comparative fault of Defendant nor did it mention what amount of the settlement was attributable to the included claim of Mrs. Royse for loss of consortium. Defendant has submitted in support of his Motion in Opposition to Plaintiff's Summary Judgment Motion an affidavit of Donald Thomasson, his attorney in the third party action.[2] Mr. Thomasson states in his affidavit that the comparative fault in Defendant was taken into account when negotiating the final amount of settlement with Teledyne and that the final settlement amount included a portion allocated to Mrs. Royse's loss of consortium claim.

Discussion

A. Plaintiff's Allegation that Defendant Did Not Abide by Local Rule 7-4.01

As a threshold matter, Plaintiff argues the court should treat Defendant's factual contentions in ¶ 1 and 2 of his Suggestions in Opposition as waived because Defendant failed to specifically controvert Plaintiff's Statement of Uncontroverted Facts. Local rule 7-4.01(E) provides, in relevant part, "[e]very memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists ... [t]he opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts." E.D.Mo.L.R. 7-4.01(E). The rule further states that "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Id.
The court finds that Defendant has not waived the factual contentions found in his Suggestions in Opposition. Defendant in his Suggestions in Opposition incorporated Plaintiff's Statement of Uncontroverted Facts and also stated two additional which he contends are uncontroverted.[3] While the semantic differences found in the parties' statements of facts regarding the content and scope of the settlement agreement are minute, Defendant has nevertheless complied with requirements of rule 7-4.01. As such, Defendant has not waived the factual contentions found in his Suggestions in Opposition.

B. Standards for Motion for Summary Judgment

The standards governing a motion for summary judgment are well settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant a motion for summary judgment if all of the information before the court demonstrates that there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. *379 56(c). The burden initially is on the moving party. See Handeen v. Lemaire, 112 F.3d 1339, 1346 (8th Cir.1997). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow the trier of fact to return a verdict for it. See FED.R.CIV.P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

C. The Statute at Issue

An employer has a right of subrogation, under § 287.150(3), against a tortfeasor responsible for its employee's injury, death or occupational disease. See Mo. REV.STAT. § 287.150(3) (1994). When an employee obtains a recovery against a third party for his/her work-related injuries, the employee "becomes a trustee of an express trust for the benefit of the employer to the extent of the employer's proportionate share of the recovery." Consolidated Freightways v. Batton, 673 S.W.2d 96, 98 (Mo.Ct.App.1984) (citation omitted). The end result is that an employer's subrogation interest is limited to what compensation has been paid or is payable under the workers' compensation law. See Hacon, Inc. v. Chandeysson Elec. Co., 466 S.W.2d 157, 159 (Mo.Ct.App. 1971). The employee and employer in effect have a contractual arrangement. See State ex. rel. Missouri Pac. R.R. Co. v. Haid, 332 Mo. 616, 59 S.W.2d 690, 692 (1933); B. MICHAEL KORTE, 29 MISSOURI PRACTICE § 8.30 (1997).
Prior to the amendment of § 287.150(3), the comparative fault of the employee was irrelevant in determining the value of an employer's subrogation interest on an employer's recovery from a third party tortfeasor. See Liberty Mutual Ins. Co. v. Garffie, 939 S.W.2d 484, 487 (Mo.Ct.App. 1997). Courts construing the pre-amendment version of § 287.150(3) held that comparative fault was not an issue when an employer sought to "re-coup compensation payments from a third party tortfeasor." Akers v. Warson Garden Apartments, 961 S.W.2d 50, 56 (Mo.1998) (citing Rogers v. Home Indemnity Co., 851 S.W.2d 672, 676 (Mo.Ct.App.1993)).
The General Assembly amended § 287.150(3) in 1993. It now provides:[4]
Whenever recovery against a third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee ...
(1) The total amount paid to the employee or his dependents shall be treated as an advance payment if there is no finding of comparative fault on the part of the employee; or

(2) A percentage of the amount paid to the employee of his dependents equal to the percentage of fault assessed to the third person from *380 whom recovery is made shall be treated as an advance payment if there is a finding of comparative fault on the part of the employee.

MO.REV.STAT. § 287.150(3) (1994).
The issue of whether an employer's subrogation interest should be reduced if an employee's recovery from a third party tortfeasor was reduced by his/her comparative fault appears to be one of first impression in Missouri. Also an issue of first impression is what effect an employee's settlement with a third party has on an employer's subrogation rights under § 287.150(3) whenever an employee argues he/she was comparatively at fault in the work-related accident.

D. Statutory Interpretation of § 287.150(3)

"The primary rule of statutory construction is to ascertain the intent of the General Assembly." McCormack v. Stewart Enterprises, Inc., 916 S.W.2d 219, 225 (Mo.Ct. App.1995) (citing Sheldon v. Bd. of Trustees of the Police Retirement Sys., 779 S.W.2d 553, 554 (Mo.1989)). Since workers' compensation law was created solely by statute, a court is "bound by the general rules of statutory construction in interpreting" its provisions. Simpson v. Dale E. Saunchegrow Const., 965 S.W.2d 899, 902 (Mo.Ct.App.1998) (citation omitted). In deciding what effect a statutory amendment has to the statute, a "[c]ourt looks to the words used in the statute and the plain and ordinary meaning of those words." Hagan v. Dir. of Revenue, 968 S.W.2d 704, 706 (Mo.1998). In so doing, the court "must give effect to [the] statute as written." Bright v. Bright, 989 S.W.2d 196, 199 (Mo.Ct.App.1999) (citation omitted). When amending a statute the legislature is "presumed to have intended the amendment to have some effect or to accomplish some legislative purpose." Bennett v. Dir. of Revenue, 889 S.W.2d 166, 169 (Mo.App. 1994).
The Workers' Compensation Act was enacted for the primary purpose of mitigating losses sustained as a result of "accidental injuries received in the workplace." McCormack, 916 S.W.2d at 225-26. "The purpose of [§ 287.150] is to protect and benefit the employer liable for compensation, and the statute is designed to afford indemnity for compensation payable by the employer." Akers, 961 S.W.2d at 56 (citing McCormack, 916 S.W.2d at 224). Section 287.150 was enacted to cure the "evil" or "mischief" caused by an injured employee recovering for injuries both from his employer and from a third-party tortfeasor. Rose v. Falcon Communications, Inc., 6 S.W.3d 429, 431 (Mo.Ct.App.1999).
This court in determining the meaning of § 287.250(3) "must not be guided by a single sentence ..., but should look to the provisions of the whole law, and its object and policy." Williams v. Missouri Dep't. of Soc. Serv., 978 S.W.2d 491, 494 (Mo.Ct.App.1998) (citations omitted). "Statutes are to be given a common-sense and practical interpretation." Concord Publ'g. House, Inc. v. Dir. of Revenue, 916 S.W.2d 186, 194 (Mo.1996) (citation omitted). When the definitions for terms are not provided by the legislature, the court must determine the meaning of those undefined terms from the dictionary definition existing when the statute was enacted. Hoag v. McBride & Son Inc. Co., Inc., 967 S.W.2d 157, 169 (Mo.Ct.App.1998).
In interpreting § 287.150(3), there are four terms relevant to deciding the current motion before the court. Those four terms are "recovery," "finding," "determined" and "trier of fact." "Recovery," as Defendant points out in his Suggestions in Opposition, has been defined within workers' compensation law as "the amount actually collected from the third person." Barker v. H & J Transporters, Inc., 837 S.W.2d 537, 541 (Mo.Ct.App.1992) (holding the "recovery" under the pre-amendment version of § 287.150(3) includes settlement proceeds from a tort action). This definition articulated by the Missouri Court of Appeals would include settlements by an *381 employee with any third party tortfeasor, including Defendant's third party settlement with Teledyne.
The word "finding" has also been defined by Missouri courts. In State ex rel. Townsend v. Holtcamp, 330 Mo. 1101, 55 S.W.2d 428 (1932), the Supreme Court defined "finding" as it pertained to probate court appeals. The Court defined it as a "judgment finally disposing of ... a case." Id. at 431. Although "determined" has not been specifically defined by Missouri courts, it's dictionary definition is "having reached a decision; firmly resolved." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 346 (1990).
The most important term found in § 287.150(3) in relation to this case is "trier of fact." It is defined in Black's Law Dictionary as "commonly refer[ing] to [a] judge in jury waived trial or jury which, in either case, has the exclusive obligation to make findings of fact in contrast to rulings of law which must be made by [the] judge." BLACK'S LAW DICTIONARY 1506 (6th Ed.1990).
In construing and applying these definitions within the context of § 287.150(3) it appears that the drafters of § 287.150(3) contemplated that an employee's comparative fault percentage would only be used to deduct an employer's subrogation recovery in instances where a judicial determination of an employer's comparative fault has been made. That is, in instances where a judge or jury has deliberated and reached a result as to a claimant's comparative fault. Settlement agreements entered into by parties, without a jury's verdict or a judge's decision (in a court-tried case), would therefore not be a "finding" by a "trier of fact" within the purview of § 287.150(3). In a case with a similar procedural history and factual circumstances as this one, a trial court judge ruled that a reduction of an employer's subrogation interest would occur only if a "trier of fact" had determined that an employee was comparatively at fault. See Garffie, 939 S.W.2d at 486 (involving claimant injured in work-related accident who settled prior to trial a products liability action against a manufacturer for those work-related injuries). The court believes the trial court's ruling in Garffie is the proper interpretation and application of § 287.150(3) for this court to follow.
Defendant contends in his Suggestions in Opposition that since the word "recovered," within the context of § 287.150(3), contemplates all proceeds from a settlement with a third party, it must be read in conjunction with the more critical portion of § 287.150(3) involving the determination by a "trier of fact." In regards to this argument, Defendant contends that § 287.150(3) is ambiguous due to its reference to both "recovery" and a "finding of comparative fault," therefore being inconsistent with the statute's purpose of making a reduction in an employer's subrogation interest when an employee is comparatively at fault.
A fundamental rule of statutory construction is that a "definite and specific phrase or word takes precedence over the general." Short v. Short, 947 S.W.2d 67, 70 (Mo.Ct.App.1997). "Recovery" in the context of § 287.150(3) is a broad statement of an employer's subrogation rights over an employee's third party tort claim proceeds. The preeminent issue in this case is what did the legislature intended when they amended this section? The plain language of the statute suggests that the legislature intended that a determination by a judge or jury of an employee's comparative fault be required to reduce an employer's subrogation interest. There is no ambiguity found within the statute because the drafters were specific in articulating that a "finding of comparative fault" must be made to reduce the employer's subrogation interest. Although Defendant is correct in stating that a great number of civil cases that settle prior to trial would be affected by the requirement that a trier of fact make a finding of comparative fault, it is the province of the legislature, not this *382 court, to change the law to deal with such circumstances. Since no finding of employee's comparative fault was determined in his third party action by a judge or a jury, Plaintiff is entitled to its full subrogation interest irrespective of employee's comparative fault.

E. Loss of Consortium Claim

The parties have submitted arguments regarding whether Plaintiff's subrogation interest should be reduced because Mrs. Royse's claim for loss of consortium was included in Defendant's settlement with Teledyne. Under Missouri Workers' Compensation law, a widow's wrongful death claim is independent of the spouse's claims, such that the employer cannot exercise subrogation rights over the widow's claim. See Bridges v. Van Enterprises, 992 S.W.2d 322, 325 (Mo.App.1999). A spouse's loss of consortium claim under Missouri law is independent of any of the other spouse's tort claims. Id. Thus, "[a] case of action for loss of consortium, while derivative of, is otherwise to be considered separate and distinct from [a] plaintiff spouse's action for damages." Rill v. Trautman, 950 F.Supp. 268, 272 (E.D.Mo. 1996) (citations omitted).
Plaintiff cites the Pennsylvania case of Darr Constr. v. Workmen's Compensation Appeal Bd., 677 A.2d 1301 (Pa. Commw.1996), as persuasive authority to support the proposition that an employer's subrogation lien may attach to a spouse's loss of consortium claim. Although the Court's reasoning in Darr is helpful in resolving the issue before the court, Plaintiff failed to note in his Suggestions in Opposition that this ruling was subsequently overturned by the Pennsylvania Supreme Court. See Darr Constr. v. Workmen's Compensation Appeal Bd., 552 Pa. 400, 715 A.2d 1075, 1076 (1998).
The Darr case involved five claimants injured by an explosion that occurred during the course of their employment. Id. Workers' Compensation benefits were paid and the claimants and their spouses filed civil actions against a third party seeking damages for their work-related injuries. Id. at 1076-77. Included in these civil actions were spousal claims for damages for loss of consortium. Id. at 1077. The Pennsylvania Supreme Court held, expressly overruling the lower court, that since the spouses when settling their loss of consortium claims received separate checks and signed-separate settlement arrangements with the tortfeasor, the employer had no subrogation interest in those spouses' recovery for their loss of consortium claims. Id. at 1076; see Warner Lambert Co., Inc. v. Workmen's Compensation Appeal Bd., 133 Pa.Cmwlth. 250, 575 A.2d 956 (1990) (holding that an employer's subrogation interest does not include a loss of consortium claim when there was no jury verdict attributed to the amount of recovery).
In analyzing the Darr decision, it is apparent that it is distinguishable from this case. From the settlement with Teledyne, Mrs. Royse did not receive a separate check for her claim of loss of consortium claim nor was there mention of her recovery amount as a percentage or portion of the overall settlement with Defendant. Evidence that Mrs. Royse's loss of consortium claim was taken into account when settling the third party claim is presented by Defendant through the affidavit of Donald Thomasson.[5] However, this evidence is insufficient to support Defendant's assertion that the loss of consortium claim should reduce Plaintiff's subrogation rights. Pennsylvania courts have held that a "unilateral declaration by [a] claimant's attorney" stating that a loss of consortium claim was allocated as part of an overall settlement of a third party claim is insufficient to insulate that claim from a subrogation action. Pendleton v. Workmen's *383 Compensation Appeal Bd., 155 Pa. Cmwlth. 440, 625 A.2d 187, 189 (1993). This court believes the Pennsylvania court's reasoning is sound and is applicable to this case as well.
The Defendant argues, with the lower court's holding in Darr as authority, that whether an employer's subrogation interest intends to loss of consortium claims hinges upon whether the employer was consulted during the settlement of the third party claim. While the lower court in Darr found that giving the employer and its insurers an opportunity to participate in the negotiations is important in allocating a loss of consortium recovery, it is not dispositive on the issue. The Pennsylvania Supreme Court found more critical in determining an employer's subrogation interest the potential for abuse by claimants structuring a loss of consortium settlement without employer or insurer participation. Darr, 715 A.2d at 1081. However, the non-participation of Plaintiff in Defendant's settlement with Teledyne does not remedy the fact that Mrs. Royse's loss of consortium claim was not sufficiently documented in the settlement documents. Accordingly, Plaintiff's subrogation interest will not be reduced by the undetermined amount of Mrs. Royse's loss of consortium claim.
In addition to what has been said with reference to the construction of § 287.150, other considerations would seem to support the court's interpretation of the statute in this case. As noted earlier, the settlement document does not contain any assessment of comparative fault to Chester Royse, plaintiff in the personal injury and defendant in this suit. The settlement agreement is silent as to any amount or percentage allocated to Mrs. Royse's loss of consortium. The resolution of the personal injury lawsuit was not the result of a jury verdict which would have resulted in a finding of comparative fault or a finding of no comparative fault. The parties reached a settlement. A settlement is the result of negotiations, including a weighing of the parties' estimate of what a jury would do, considering all the factors going into a jury's verdict: the factual evidence, the credibility of witnesses, and the weaknesses and strengths of the Royses' case and of Teledyne's defense. The negotiations would have taken into consideration other factors such as verdicts other juries have reached under similar facts.
It is reasonable to assume that the amount paid is the net amount which the parties estimate would have been awarded, discounting comparative fault, so that under such an analysis, comparative fault would no longer be a factor. There can be no trial between Chester Royse and Teledyne Princeton, Inc. The case is settled. It is impossible to tell at this point what comparative fault may have existed.
The defendant in this matter seeks to have a deduction for his comparative fault, but there is no evidence as to what the comparative fault may have been. As a result, defendant's claim that comparative fault should be deducted, cannot be successful.
A finding in our system of justice should be clear and available for all to see. Ours is a court open to public. Rule 77, Fed. R.Civ.P. It is not a secret system of reaching justice. The only way one could know what amount of comparative fault is attributable to the plaintiff or what amount of a judgment should be allocated to the loss of consortium is if those amounts are set out somewhere for all to see, as in a verdict. As mentioned, no trial is possible between the Royses and Teledyne. That opportunity or risk, as the case may be, is gone.

Order
For the foregoing reasons,
IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 19) be granted in part. A separate written Partial Summary Judgment in favor of the Plaintiff and against the Defendant will be entered on this date.
NOTES
[1] Before Plaintiff's lien can be levied on Defendant's settlement amount, attorney's fees and costs must be deducted pursuant to Mo. REV.STAT. § 287.150(3) (1994). The parties are in agreement that the total amount of Defendant's attorney fees and costs arising from his third party action is unclear.
[2] Plaintiff's argument that Mr. Thomasson's affidavit cannot be considered by the court is without merit. A party opposing summary judgment both under Rule 56 of the Federal Rules of Civil Procedure and this court's Local Rule 7-4.01(B) is permitted to include affidavits as evidence in support of their motion.
[3] Defendant in opposing Plaintiff's Motion for Summary Judgment incorporated Plaintiff's uncontroverted facts, including ¶ 10 which stated:

[t]he settlement documents executed by Mr. and Mrs. Royse and the third party tortfeasor, Teledyne Princeton, Inc., does not contain any assessment of comparative fault to any of the parties. Moreover, the settlement agreement was also silent as to any amount or percentage of the settlement that was allocated toward Mrs. Royse's loss of consortium claim.
Defendant stated in his list of uncontroverted facts that "[t]he settlement between Mr. and Mrs. Royse took into account all claims by [them] against the third party in question, including Mrs. Royse's loss of consortium claim." Defendant also stated that "[t]he settlement in question was reflective of Mr. Royce's comparative fault."
[4] The italicized portions of this section are the portions added by Senate Bill 251 of the 87th General Assembly in 1994.
[5] The affidavit states that "the settlement amount addressed the claims of both Mr. and Mrs. Royse."