

# Missouri Court of Appeals

## Southern District

### Division One

ROBERT GRAHAM, )
)
    Employee-Appellant/Cross-Respondent, )
)
v. )
)
LATCO CONTRACTORS, INC., )
)
    Employer-Respondent/Cross-Appellant, )
)   Nos. SD33332 & SD33337
and LEGION INSURANCE CO. (In Liquidation)/ )   Filed: 4-7-15
MISSOURI PROPERTY & CASUALTY )
INSURANCE GUARANTY ASSOCIATION )
)
    Insurer-Respondent/Cross-Appellant, )
)
and TREASURER OF THE STATE OF )
MISSOURI AS CUSTODIAN OF THE )
SECOND INJURY FUND, )
)
    Additional Party-Respondent. )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

This appeal arises from an adjudication by the Labor and Industrial Relations

Commission (Commission) of a dispute concerning a § 287.150.3 subrogation claim.[1]

---

[1] All references to statutes are to RSMo (2000).

Under the very unusual circumstances presented by this case, the Commission exceeded its powers by deciding that controversy in this administrative worker's compensation proceeding. Therefore, we reverse that portion of the final award of compensation and remand for further proceedings consistent with this opinion.

In 1995, Robert Graham (Employee) began working for Latco Contractors, Inc. (Employer). Employee built and maintained chicken houses where he was routinely exposed to chemicals and wastes incidental to poultry farming. As a result of this exposure, Employee began to experience respiratory problems in late 1996 or early 1997. He also developed a nervous system disorder in which he became hypersensitive to a wide variety of distinct smells. When exposed to perfume or gasoline fumes, for example, Employee would lose consciousness due to insufficient oxygenation to his brain. His respiratory problems and nervous system disorder worsened over time. He developed memory problems and an inability to control his temper, exhibiting angry outbursts from time to time. By 2000, Employee was unable to continue working for Employer. At the time, Employee was approximately 41 years old. He resided with his wife (Wife) and their two young sons, who were then ages 4 and 5.

In July 2000, Employee filed a worker's compensation claim seeking permanent and total disability due to occupational disease diagnosed on July 5, 2000. Employer was then insured by Legion Insurance Co. (Legion). Although Employer and Legion denied the claim, Legion paid some of Employee's medical bills. Legion became insolvent in April 2002. Missouri Property & Casualty Insurance Guaranty Association (MIGA) then became obligated to provide statutory coverage, but it did not pay any of Employee's

2

medical bills or any other worker's compensation benefits. Employee sought medical treatment on his own and went to see doctors at the Veterans Administration.

In 2002, Employee and Wife filed a lawsuit against Tyson Foods for Employee's personal injuries and Wife's separate claim for loss of consortium. In September 2005, Employee and Wife settled their claims for a total of $730,000. Their share of the settlement included a check made payable to both Employee and Wife in the amount of $313,712.90.

In April 2012, a hearing was held on Employee's worker's compensation claim by an administrative law judge (ALJ). At the hearing, Employee and Wife testified that they shared the net recovery from the Tyson lawsuit equally. Wife testified that she and Employee used the funds to buy their home and to "pay back money that we had to borrow for the six years we had no income[.]" She also provided extensive testimony concerning the ways in which Employee's injury caused a loss of consortium to Wife. The documentary evidence adduced at the hearing included an affidavit from Employee's attorney, detailing the amounts dispersed in the third-party settlement.[2] The attorney testified, *inter alia*, that Employee and Wife's settlement check "represented both [Employee's] share of the proceeds ... for his personal injuries and [Wife's] share of the proceeds ... for her loss of consortium claim[.]"

In April 2013, the ALJ determined, *inter alia*, that Employee was permanently and totally disabled from the July 5, 2000 occupational disease alone.[3] The ALJ made

_____

[2] Attorney fees and expenses totaled $312,134.93. Additional funds are being held in trust for the benefit of Employee and Wife pending the outcome of a Medicare claim and this case.

[3] For that reason, no liability was assessed against the Second Injury Fund.

two rulings relevant to the subrogation issue: (1) the entire net recovery from the Tyson lawsuit was subject to the § 287.150.3 subrogation lien; and (2) because "MIGA stands in the shoes of Legion[,]" MIGA was entitled to be reimbursed $41,293.40 for medical bills paid by Legion. On review, the Commission decided that MIGA was not entitled to recover medical payments made by Legion. The Commission adopted the ALJ's decision on all other issues. This appeal by Employee and cross-appeal by MIGA followed.

One ground for reversal of a decision by the Commission is that it acted without or in excess of its powers. *See* § 287.495.1(1). Additionally, we independently review Commission decisions that are interpretations or applications of law. *See* ***Johnson v. Denton Construction Co.***, 911 S.W.2d 286, 287 (Mo. banc 1995); ***Birdsong v. Waste Management***, 147 S.W.3d 132, 138 (Mo. App. 2004). Employee and MIGA each challenge the Commission's decision on the statutory subrogation issue, which we agree must be reversed based upon the very unusual procedural problems presented here. Because of those problems, the Commission acted in excess of its powers by deciding the subrogation issue in this administrative worker's compensation proceeding.

The facts relating to the settlement of the Tyson lawsuit are undisputed. The lawsuit involved a personal injury claim brought by Employee and a loss of consortium claim brought by Wife. A third-party recovery by Employee on his personal injury claim is subject to the statutory subrogation interest created by § 287.150.3. *See* ***Kinney v. Schneider Nat'l Carriers, Inc.***, 200 S.W.3d 607, 610 (Mo. App. 2006). "[T]he employee becomes the trustee of an express trust for the benefit of the employer for that part of the recovery subject to subrogation." ***Missouri Highway & Trans. Comm'n v. Merritt***, 204

4

S.W.3d 278, 283 (Mo. App. 2006). Any amount recovered by Wife, however, is not subject to that statutory right of subrogation. *See* ***Bridges v. Van Enterprises***, 992 S.W.2d 322, 329-30 (Mo. App. 1999); ***William H. Pickett, P.C. v. Am. States Fam. Ins. Co.***, 857 S.W.2d 309, 312-13 (Mo. App. 1993).[4] As noted above, Employee and Wife settled their respective claims for one lump sum payment. There was no apportionment of the settlement proceeds between the claims in the settlement documents. Both Employee and Wife were named as payees on the settlement check, and they shared the money equally. Based upon Wife's testimony and the affidavit from her attorney, she took the position that some of the settlement proceeds belonged to her. The Commission's ruling, however, effectively determined that all of the net settlement proceeds belonged to Employee and that Wife received nothing to settle her separate, non-subrogated loss of consortium claim.[5]

---

[4] This follows from the principle that, "[w]hen a married person is injured, two independent, separate and distinct causes of action arise: one accrues to the injured person for the injuries, and the other accrues to the injured person's spouse for damages suffered as a result of his or her loss of the injured person's services, society and companionship." ***H.R.B. v. J.L.G.***, 913 S.W.2d 92, 99 (Mo. App. 1995). "Missouri recognizes a loss of consortium claim as a separate and distinct personal injury claim." ***Wright v. Barr***, 62 S.W.3d 509, 537 (Mo. App. 2001). "The claim encompasses the other spouse's loss of affection, care, companionship, and services, as well as an impairment or destruction of the sexual life of the married couple, due to the conduct of a tortfeasor." ***Id***.

[5] The Commission's decision was based upon ***Ryder Integrated Logistics, Inc. v. Royse***, 125 F.Supp. 2d 375 (E.D. Mo. 2000). ***Ryder*** involved a third-party settlement in which an employee and his wife received one lump sum check to settle the employee's personal injury claim and the wife's separate loss of consortium claim. ***Id***. at 377-78. The settlement documents did not contain an apportionment of the proceeds by amount or percentage between the two claims. ***Id***. at 382-83. Citing only Pennsylvania law, the trial court in ***Ryder*** decided the lack of apportionment conclusively established that the wife received nothing for the settlement of her separate loss of consortium claim. ***Id***. at 382-83. We find the reasoning in ***Ryder*** unpersuasive and decline to follow it.

Wife is not a party to this worker's compensation case. The joinder rules found in Rule 52 of Missouri Rules of Civil Procedure do not apply. *McGuire v. Christian County*, 442 S.W.3d 117, 122 (Mo. App. 2014). We are not aware of any other statute or regulation that permits Wife to be joined as a party to this proceeding. It would be a violation of due process to permit the Commission to affect Wife's rights and interests in a proceeding to which she is not, and cannot be made, a party. *See Pauli v. Spicer*, 445 S.W.3d 667, 673-74 (Mo. App. 2014).

MIGA's cross-appeal presents another facet of the same problem. The statutory subrogation claim was based upon the payment of Employee's medical expenses by Legion. The obligation to pursue that claim rests, by statute, on Legion. *See* § 287.150.6. That insurer, however, is in liquidation. Therefore, Legion no longer has standing to pursue the subrogation claim. The order to liquidate was required to name the Director of the department of insurance as the liquidator. *See* § 375.1152(5); § 375.1176.1. One of the liquidator's powers is to collect all debts and money due the insurer, which includes the power to pursue any creditor's remedies available to enforce the claim. *See* § 375.1182.1(6). Like Wife, the Director is not a party to this proceeding. By deciding the statutory subrogation issue in the Director's absence, the Commission exceeded its powers. *See Doss v. Howell-Oregon Elec. Co-op., Inc.*, 158 S.W.3d 778, 782 (Mo. App. 2005) (trial court erred by adjudicating a worker's compensation lien when the insurer was not a party to that action). In *Doss*, we outlined five different circuit court remedies available to the parties to adjudicate a § 287.150 subrogation claim. *Id*. at 782-83. *Bridges* provides an example for how this sort of subrogation dispute, involving the proper apportionment of a third-party settlement between a

6

subrogated wrongful death or personal injury claim and a non-subrogated loss of consortium claim, can be decided after an evidentiary hearing has been conducted. *See Bridges*, 992 S.W.2d at 326-28 (affirming an apportionment of $2,000 to the death claim and $166,000 to the loss of consortium claim). No reported Missouri appellate opinion involving similar facts, on the other hand, appears to authorize the Commission to adjudicate that issue in an administrative proceeding.

The portion of the Commission's final award adjudicating the statutory subrogation dispute is reversed. In all other respects, the Commission's final award of compensation is affirmed. The cause is remanded for entry of an amended final award of compensation consistent with this opinion.

JEFFREY W. BATES, J. – OPINION AUTHOR

DANIEL E. SCOTT, J. – CONCUR

WILLIAM W. FRANCIS, JR., C.J./P.J. – CONCUR