NOT DESIGNATED FOR PUBLICATION

No. 114,942

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JON-DAVID BARNHILL,
*Appellee*,

v.

BRW EXPRESS, *et al.*,
*Defendants*,
and
(ALLIED WASTE, INC. and AMERICAN HOME ASSURANCE CO.),
*Appellants*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL A. DUNCAN, judge. Opinion filed March 3, 2017. Affirmed.

*Brian G. Boos*, of Wallace Saunders, of Overland Park, and *Daniel E. Stuart*, of Law Office of Daniel E. Stuart, P.A., of Leawood, for appellants Allied Waste, Inc., and American Home Assurance Co.

*Patrick F. Bottaro*, of Bottaro, Kubin & Yocum, P.C., of Leawood, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

*Per Curiam*: Jon-David Barnhill was injured when the truck he was driving in the course of his employment with Allied Waste Services collided with another truck. Thereafter, he filed a claim for workers compensation benefits in Missouri. While Barnhill's workers compensation claim was pending, he filed a tort suit in Kansas, where the collision occurred, against a number of defendants seeking damages for his injuries. Allied and its insurer, American Home Assurance Company (collectively referred to as

1

Allied), were granted the right to intervene in the litigation to protect their subrogation interests. Barnhill eventually reached settlement agreements with BRW Express, LLC, William Babcock, Melissa J. Peterson, David Reeves, and Deffenbaugh Industries, Inc. (defendants); he then moved the district court to approve the settlements and determine the parties' comparative fault and his total damages. The district court found that Barnhill was partially at fault and subsequently calculated the amount of indemnification Allied was entitled to using a formula that reflected the finding. Allied now appeals alleging that the district court erred in four ways.

First, it claims that the district court erred in holding hearings to determine fault after a settlement agreement had been reached. Because we find that neither Kansas nor Missouri law prohibit such hearings, there was no error. Next, Allied claims that Barnhill is subject to judicial estoppel based on what it claims was a contrary position he took in his Missouri workers compensation case. But the record on appeal is not sufficient for us to adequately review this claim.

Third, Allied asserts that the district court erred when it awarded costs to Barnhill for expenses incurred after Allied rejected his settlement offer, arguing that Barnhill was not "a party defending against a claim" as required by K.S.A. 2016 Supp. 60-2002(b). Because we find that the legislature's purpose in enacting K.S.A. 2016 Supp. 60-2002(b) was clearly to encourage settlement by providing a disincentive for parties to continue litigation in the face of good-faith settlement offers, it applies regardless of the party's initial posture in the litigation. Barnhill was clearly defending against the subrogation claims of Allied, so the statute applies. Finally, Allied contends that the district court erred when it set the amount of the supersedeas bond too low and permitted Barnhill to withdraw the remainder of settlement proceeds that had been deposited with the court. Because the goal here was to secure Allied's judgment and the district court set the amount of the appeal bond well in excess of the judgment, it cannot be said that the

2

district court abused its discretion by setting the bond too low. Accordingly, the judgment of the district court is affirmed.

FACTUAL AND PROCEDURAL ISSUES

Barnhill was driving a truck for Allied Waste Services when he came upon a collision blocking his lane of travel on the highway. Barnhill stopped his truck on the highway to avoid hitting the vehicles involved in the collision. Barnhill was then rear-ended by a truck being driven by William Babcock on behalf of BRW Express, LLC. The impact pushed the trash container Barnhill was pulling through the cab, crushing his torso against the steering wheel and shoving his head through the windshield. Barnhill suffered severe injuries to his head, chest, stomach, intestines, left arm, left hip, and left leg as a result of the crash.

Because Barnhill signed his contract for hire with Allied in Missouri, he filed for workers compensation benefits in that state. An administrative law judge (ALJ) found that the accident left Barnhill with a permanent partially disability to 50% of his body. The ALJ found that Allied had paid Barnhill $70,996.71 in compensation for his disability and $602,691.35 in medical costs as of the date of the award. The ALJ further found that Barnhill was entitled to $77,808 in future disability compensation payments, as well as an unknown amount in future medical expenses. The ALJ's final award also recognized that Allied had a subrogation interest in any recovery Barnhill may obtain from third-parties liable for his damages.

While the workers compensation claim was pending, Barnhill filed suit in the Wyandotte County, Kansas, district court against defendants alleging that the defendants were liable for the damages he suffered. Allied filed a motion to intervene in the action to protect their subrogation interest. The district court granted Allied's motion.

3

Prior to trial, Barnhill reached settlement agreements with each defendant, for amounts collectively totaling $1,170,000. The settlement agreement itself included a statement that the court, after hearing all relevant evidence could reasonably find Barnhill 7.5% at fault, Allied 12.5% at fault, and the defendants collectively 80% at fault. It called for the district court to approve or modify the reasonable allocation of fault stated in the settlement agreement. Barnhill then filed a motion asking the district court to approve the settlement agreements, determine the relative fault of all of the parties, and determine what amount of the recovery Allied was entitled to as indemnification for workers compensation benefits it had paid to Barnhill. After the first hearing on the issue of fault, Barnhill extended an offer to Allied to settle the claim for indemnification for $250,000. Allied rejected the offer.

The district court entered judgments finding Barnhill 20% at fault and calculating his total damages at $6,769,737.28. It further found Allied 10% at fault and the defendants collectively 70% at fault. The district court found that Allied's right to subrogation was $85,259.84 and ordered a future credit of $468,476.40. Allied then filed a notice of appeal and a motion with the district court for a supersedeas bond and stay of execution. Meanwhile, Barnhill filed a bill of costs, requesting reimbursement for all of the costs he incurred after his settlement offer was rejected by Allied. The district court granted Allied's bond request at the reduced amount of $486,479.66—the amount Allied initially sought to recover from defendants. The court also granted Barnhill's request for costs.

Allied now appeals.

4

*The district court did not err when it conducted hearings to determine fault and total damages after Barnhill agreed to settle his case with defendants.*

Allied contends that the district court erred when it conducted post-settlement hearings to determine the comparative fault of the parties and Barnhill's total damages rather than calculating their subrogation right based solely on the amount for which Barnhill settled with defendants. It is important to note that Allied does not challenge the actual calculation made by the judge, only his decision to use total damages in his calculation as opposed to the settlement amount. Addressing this issue requires this court to engage in statutory interpretation. Interpretation of a statute is a question of law over which this court has unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

At issue in this litigation is the district court's interpretation of section 287.150 of the Missouri Workers Compensation Law. Mo. Rev. Stat. § 287.150 (2000). When an employee is injured on the job and receives workers compensation benefits, Mo. Rev. Stat. § 287.150(1) grants the injured employee's employer the right to both pursue recovery against and share in any recovery obtained from a third party that may be partially liable for the employee's injury. The purpose of the statute "is to benefit and protect the employer liable for compensation, and it is designed to provide indemnity for compensation payable by the employer. [Citation omitted.] The statute is designed to insure that there is not a double recovery by the injured employee." *Missouri Highway and Trans. Com'n v. Merritt*, 204 S.W.3d 278, 282 (Mo. App. 2006).

The statute outlines formulas for determining what portion of the third-party recovery the employer is entitled to as indemnification for amounts paid to the employee. Mo. Rev. Stat. § 287.150(2), (3). Mo. Rev. Stat. § 287.150(3) provides:

5

"Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorney fee have been paid, the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered if there is no finding of comparative fault on the part of the employee, or the total damages determined by the trier of fact if there is a finding of comparative fault on the part of the employee." Mo. Rev. Stat. § 287.150(3).

Here, Barnhill negotiated settlement agreements with the defendants then asked the district court to approve the agreements and as part of the agreements to determine the parties' comparative fault. At the hearing to approve the settlement agreements, the parties had an opportunity to present evidence in the form of both witnesses and deposition testimony. After considering all of the evidence, the district court determined that Barnhill was 20% at fault; his employer, Allied Waste, Inc., was 10% at fault; and the combined defendants were 70% at fault. Having found that Barnhill was at least partially at fault, the district court concluded that an additional hearing was necessary to determine Barnhill's total damages so that the court could make the calculations required by Mo. Rev. Stat. § 287.150(3).

Allied argues that there is no precedent in Missouri law for holding hearings to determine fault and damages after a settlement agreement has been reached. They contend that once an agreement has been entered into, all that is left is for the court to plug the numbers into the Mo. Rev. Stat. § 287.150(3) formula, using the settlement amount as the "[a]mount [r]ecovered." In support of their argument, Allied primarily relies on *Merritt*.

*Merritt*, however, is not directly on point. There, Merritt received $122,380 in workers compensation benefits from his employer for injuries he sustained when he was

6

involved in a motor vehicle accident during the course of his employment. Merritt then filed a third-party suit against the driver of the vehicle that caused the accident. Prior to trial, Merritt settled the case for $100,000. After Merritt recovered the money, his employer filed suit against him claiming a right to subrogation. The trial court found in favor of the employer and ordered that the first $33,333.33 Merritt recovered be paid to his attorney to cover fees and for the remainder to be paid to the employer to reimburse it for the payments it had made to Merritt. Merritt then appealed, arguing that the district court misconstrued and misapplied Mo. Rev. Stat. § 287.150.

On appeal, the Missouri Court of Appeals for the Eastern District affirmed the district court, noting that it properly applied the statutory formula. 204 S.W.3d 283. The appellate court dismissed Merritt's argument that the district court arrived at an absurd result because it left him recovering nothing. The appellate court reasoned that "[n]othing in the statute indicates that the legislature did not contemplate a situation in which the Employee would, after attorney's fees have been deducted, recover from the third-party tortfeasor an amount less than the employer" paid to the employee. 204 S.W.3d 283. Instead of deviating from the statute and changing the recovery formula, the appellate court concluded that the statute was unambiguous and that the district court was correct to apply it as it was written. 204 S.W.3d at 282-83.

The primary similarity between this case and *Merritt* is that in both an injured employee reached a settlement agreement with third-party defendants in a case in which an employer had a right to subrogation based on a prior payment of workers compensation benefits. However, *Merritt* did not address the propriety of determining fault or total damages after a settlement has been reached in order to calculate an employer's right to recovery using the second part of the Mo. Rev. Stat. § 287.150(3) formula. Thus, *Merritt* is of little value here.

In their reply brief, Allied cites to *Ryder Integrated Logistics, Inc. v. Royse*, 125 F. Supp. 2d 375, 382 (E.D. Mo. 2000), for evidence that when parties have entered into a settlement agreement, an "employer [is] 'entitled to its full subrogation interest irrespective of the employee's comparative fault.'" As with *Merritt*, *Ryder* addresses a different factual scenario than that at issue here. There, injured employee, Royse, was paid workers compensation benefits and then sought recovery from a third party for his injuries. Royse ultimately settled with the third-party defendant prior to trial. Royse's employer, Ryder, then filed suit seeking recovery under Mo. Rev. Stat. § 287.150(3) (1994). In the case of *Ryder*, Royse argued that his comparative fault was considered during the negotiation of his settlement with the third-party defendant and that the ultimate amount agreed to was a reduction of Royse's total damages based on his comparative fault. Royse argued that, as a result, Ryder's recovery should be calculated using Royse's total damages rather than the amount he recovered in his third-party suit.

The Missouri Court of Appeals disagreed with Royse. Interpreting Mo. Rev. Stat. § 287.150(3), the court opined:

> "[I]t appears that the drafters of § 287.150(3) contemplated that an employee's comparative fault percentage would only be used to deduct an employer's subrogation recovery in instances where a judicial determination of an employer's comparative fault has been made. That is, in instances where a judge or jury has deliberated and reached a result as to a claimant's comparative fault. Settlement agreements entered into by parties, without a jury's verdict or a judge's decision . . . would therefore not be a 'finding' by a 'trier of fact' within the purview of § 287.150(3)." 125 F. Supp. 2d at 381.

The court then concluded: "Since no finding of employee's comparative fault was determined in his third party action by a judge or a jury, Plaintiff is entitled to its full subrogation interest irrespective of employee's comparative fault." 125 F. Supp. 2d at 382. Thus, Royse's argument was rejected not because there had been a post-settlement finding of fault, but because there had been *no* judicial finding of fault. Allied's

8

contention that *Ryder* stands for the proposition that comparative fault must be determined by a trier of fact *before* a settlement agreement is made rather than after is not supported by our reading of the case.

In their reply brief, Allied also cites to *Liberty Mut. Ins. Co. v. Garffie*, 939 S.W.2d 484 (Mo. App. 1997), in an attempt to make their point. There, in a declaratory judgment action brought by the employer, the district court found that the 1993 amendment to Mo. Rev. Stat. § 287.150 (1986), which created the distinction between cases where comparative fault is and is not determined, should not be applied to the case. The district court went on to speculate that even if the amendment was applied, indemnity would be based on the amount recovered rather than total damages because the employee's recovery was obtained via settlement and fault was not judicially determined. Furthermore, the district court surmised that it did not have the power to make a determination of fault as part of the declaratory action. On appeal, the Court of Appeals declined to address whether a finding of fault could have been made as part of a declaratory action, simply holding that the statute did not apply retroactively. 939 S.W.2d 487. The distinction between that case and ours is that Garffie attempted to have fault determined in a secondary action to which defendants were not parties. Here, defendants and intervenors were all parties to the action in which fault was determined. Also, because the appellate court decided the case on the issue of retroactivity alone, the district court's conclusion that fault could not be determined as part of the declaratory action has no precedential value.

More relevant is *Kerperien v. Lumberman's Mut. Cas. Co.*, 100 S.W.3d 778 (Mo. 2003). There, the employer paid injured employee, Kerperien, workers compensation benefits. Kerperien then sought third-party recovery against the manufacturer of the machine that caused her injuries. The case went to trial and the jury found in favor of Kerperien, awarding her 2.5 million dollars and finding her 25% at fault. While the manufacturer's posttrial motions were pending, Kerperien and the manufacturer agreed to

9

settle the case for $1,175,000. Employer's insurer, Lumberman's, then sought recovery from Kerperien under Mo. Rev. Stat. § 287.150. When the parties could not agree on the amount Lumberman's was owed, they filed an action in the district court seeking a declaratory judgment.

The district court applied the Mo. Rev. Stat. § 287.150(3) formula, using Kerperien's total damages rather than the total amount recovered to calculate the amount due Lumberman's, based on the fact that Kerperien had been found to be partially at fault. Lumberman's appealed, arguing that because Kerperien settled the case, the district court should have computed the amount it was due using the amount recovered rather than the total damages. The Missouri Supreme Court disagreed, finding that the language of the statute was unambiguous and only provided two options:  "where an amount is recovered with a finding of comparative fault, and where an amount is recovered without a finding of comparative fault." 100 S.W.3d at 781.

To the extent Allied's argument is that when a settlement is reached the amount recovered rather than the total damages should be used to calculate the amount an employer is entitled to as indemnification, *Kerperien* resolves the issue in favor of Barnhill. However, Allied also contends that it was improper for the district court to conduct post-settlement hearings on fault and damages because such a procedure is only available under Kansas workers compensation statutes and choice of law in this case dictates application of Missouri workers compensation law. So we pause in our analysis to examine the choice of laws in this case.

A choice of law analysis begins by looking to the law of the forum state to determine which jurisdiction's law applies. See *Miller v. Dorr*, 262 F. Supp. 2d 1233, 1237 (D. Kan. 2003). While another state's law may then come in to govern the case's substantive disputes, the law of the forum continues to govern the procedures the court uses to resolve the case. Restatement (First) of Conflict of Laws § 585 (1934); see also

10

*ARY Jewelers v. Krigel*, 277 Kan. 464, 481, 85 P.3d 1151 (2004) ("When addressing choice of law issues, Kansas appellate courts still follow the Restatement [First] of Conflict of Laws [1934]."). To determine whether a given issue is substantive or procedural, Kansas' conflict of law rules govern. See Restatement (First) of Conflict of Laws § 584 (1934). The comments to the restatement counsel: "In determining whether an element of a foreign transaction is one of substance or procedure, a court will examine the entire transaction which is before it. This includes the statute or other rule of law creating the alleged right or duty, and its interpretation thereof by the courts of that state." Restatement (First) of Conflict of Laws § 584, comment b (1934).

Both parties agree that Missouri law governs the workers compensation issues involved in this case. There is a dispute, however, regarding whether the district court's decision to hold post-settlement evidentiary hearings to determine fault and total damages should be analyzed using Kansas or Missouri law. Barnhill contends that the district court's decision to hold post-settlement evidentiary hearings was purely procedural. Allied seems to argue that while the availability of such hearings has a procedural feel, the issue is actually substantive because it impacts the substantive rights of the parties and conflicts with substantive Missouri workers' compensation law.

It is unnecessary for us to resolve this issue. Clearly under Kansas law, the district court may hold a post-settlement evidentiary hearing to approve an agreement; at that hearing the district court may make a factual determination regarding the relative fault of the parties. See *Maas v. Huxtable & Assocs., Inc.*, 23 Kan. App. 2d 236, 245, 929 P.2d 780 (1996). So if this is purely a procedural issue, the Kansas law was appropriately followed. But even if we were to find the issue of a post-settlement evidentiary hearing to be substantive in nature and apply Missouri law, Allied has pointed to no provision in Missouri law that would prohibit a similar hearing. Instead, they argue that such an arrangement is prohibited by Mo. Rev. Stat. § 287.150(3) and the cases discussed above

11

interpreting it. However, neither the statute nor the cases cited by Allied address such a contingency.

Allied's broad contention that a post-settlement evidentiary hearing to determine fault and damages would be impermissible under Missouri law is at odds with both the workers compensation statutes as well as other areas of law. Missouri workers compensation law requires approval of all settlements entered into by employers and employees. Mo. Rev. Stat. § 287.390(1) (2013 Supp.). Similarly, settlements in other areas, such as wrongful death, must be approved. Mo. Rev. Stat. § 537.095(1) (2000). In the case of wrongful death settlements, the district court not only approves the agreement, it also enters a judgment apportioning the damages to the various persons entitled to recover for the loss of the deceased. Mo. Rev. Stat. § 537.095(3).

The dual purposes of Mo. Rev. Stat. § 287.150(3) are to ensure that an employer receives reimbursement for workers compensation payments when there is a third party from whom an employee is able to recover and to prevent employees from receiving double recovery for their injuries. Those purposes are not jeopardized by allowing post-settlement approval of agreements and apportionment of fault.

Again, *Kerperien* helps to clarify. There, the parties had a full trial during which evidence of the parties' relative fault and total damages was admitted. The jury determined Kerperien was partially at fault and calculated Kerperien's total damages at $2.5 million. After trial, while posttrial motions were pending, the parties settled for $1,175,000—less than half the amount of the total damages. In that case, as here, Lumberman's would have recovered more if there had not been both a finding of fault and a settlement. Nevertheless, the Missouri Supreme Court determined that the amount of total damages should be used to calculate Lumberman's indemnity rather than the amount Kerperien recovered.

12

As the *Kerperien* court pointed out, Mo. Rev. Stat. § 287.150(3) only deals with two possible scenarios, one in which a trier of fact finds an employee is partially at fault in his or her injury and one in which a trier of fact does not. 100 S.W.3d at 781. Here, Barnhill was found to be 20% at fault by the district judge after an evidentiary hearing. Since there is no indication that allowing a post-settlement finding of fault, or more accurately in this case a judicial finding of fault required by the settlement agreement itself, contravenes the intent of the Missouri Legislature in drafting the indemnity statute or is at odds with the policy set forth in Missouri workers compensation law, the district court's decision is affirmed.

*We are unable to conclude, based on the record before us, that Barnhill is subject to judicial estoppel based on the position he took in his Missouri workers compensation case.*

Allied next complains that Barnhill should have been judicially estopped from arguing that the amount of Allied's recovery should be calculated using Barnhill's total damages. Allied argues that when the case was before the ALJ in Missouri, "Barnhill never told Judge Cain that he planned to later argue to the Kansas district court that (1) fault should be apportioned to Allied and (2) the lien should be determined based on Barnhill's alleged 'total' damages, not on the 'entire amount recovered.'" Judicial estoppel works to bar a party from asserting inconsistent positions at different stages of the same or subsequent related litigation. *New Hampshire v. Maine*, 532 U.S. 742, 749-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001); *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262-63, 261 P.3d 943 (2011) (recognizing that Kansas appellate courts will apply judicial estoppel). The purpose of judicial estoppel is to "'protect the integrity of the judicial process,' [citation omitted], by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *New Hampshire*, 532 U.S. at 749-50.

13

There is no firm test for the circumstances under which judicial estoppel may be invoked; however, there are several factors courts should consider. "First, a party's later position must be 'clearly inconsistent' with its earlier position." 532 U.S. at 750. Second, the later position should be prohibited only when the party prevailed on the earlier argument. If a court were to permit a party, at a later stage, to proceed with an argument that was contrary to an argument the party made and prevailed on at an earlier stage, it "would create 'the perception that either the first or the second court was misled.'" 532 U.S. at 750. This risk is eliminated if the party did not prevail on the argument in earlier stages of litigation. 532 U.S. at 750-51. Finally, courts should determine whether "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." 532 U.S. at 751.

The parties disagree on the appropriate standard of review that this court should employ when considering this issue. Allied argues that this court has de novo review while Barnhill suggests review is for abuse of discretion. Neither party cites a case dealing with judicial estoppel in support of its position. Ultimately, the standard of review is irrelevant because this court is without sufficient information to review this claim. The records from the administrative proceeding in Missouri are not before this court. The ALJ's ultimate findings of fact and conclusions of law are contained in the record as an attachment to a motion in limine, but the single document is hardly a complete record. Allied's contention that Barnhill argued that the subrogation lien "was reducible only by the Kansas district court's determination on the issue of his own alleged fault" cannot be verified or disproved based solely on the ALJ's findings.

The party making a claim has the burden to designate facts in the record to support its claim; without a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

*The district court did not err when it awarded costs to Barnhill in accordance with K.S.A.*
*2016 Supp. 60-2002(b).*

Allied next argues that the district court erred when it ordered Allied to pay some of Barnhill's costs. In May 2011, Barnhill offered to settle Allied's claim for indemnity for $250,000. Allied rejected that offer. In August 2015, the district court entered a judgment in favor of Allied for $85,259.84. Barnhill then requested that the district court order Allied to pay $6,365.79 in costs it incurred in preparation for trial after his offer was made and rejected, in accordance with K.S.A. 2016 Supp. 60-2002(b). The district court granted Barnhill's request. Allied alleges that this was error arising out of the district court's misinterpretation of K.S.A. 2016 Supp. 60-2002(b).

This court has unlimited review over claims involving statutory interpretation. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

Allied's specific claim of error is that K.S.A. 2016 Supp. 60-2002(b) should not have been applied because Barnhill was not a "'party defending against a claim.'" K.S.A. 2016 Supp. 60-2002(b), in relevant part, reads:

> "At any time more than 21 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against such party for the money or property or to the effect specified in such party's offer, with costs then accrued. . . . An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."

As Barnhill points out, the language of the statute is quite broad, not defining who may be permitted to recover costs in terms of plaintiff and defendant, but rather in terms of an offeror defending against a claim and an offeree. The broadness of this language

15

seems to indicate that the legislature envisioned and meant for the statute to encompass situations in which a cross-claim or counter-claim is made so that any party, regardless of the party's original position in the litigation, may come to be the party offering to settle. Here, Barnhill's suit began as an action between him and defendants as he sought to recover for damages caused by defendants. From the beginning, Allied had an interest in the outcome of the litigation because of their right to be indemnified for money they had previously paid Barnhill as part of his workers compensation claim. At some point, Allied determined that their rights were not being adequately protected so they filed a motion to intervene in the litigation.

Allied's motion to intervene made clear that their interest in the litigation conflicted with Barnhill's and that without intervention, "future litigation between [Allied] and [Barnhill]" was likely. In this case, future litigation would have taken the form of Allied v. Barnhill, with Allied asserting a right to indemnification from Barnhill. A similar posture was taken in this litigation, the only difference being that Barnhill was technically the plaintiff. Nevertheless, Allied's position conflicted with Barnhill's in such a way that Allied sought a larger portion of Barnhill's recovery from defendants than Barnhill wished for it to receive. This put Barnhill in the position of having to defend against Allied's claim, engendering his offer to settle. This series of events follows the typical course of intervention in which a party, "[h]aving been permitted to intervene . . . may set up personal rights he [or she] has in the subject matter different from and in addition to those of the parties." *Porth v. Local Union 201*, 166 Kan. 166, 170, 199 P.2d 788 (1948).

The legislature's purpose in enacting K.S.A. 2016 Supp. 60-2002(b) was clearly to encourage settlement by providing a disincentive for parties to continue litigation in the face of good-faith settlement offers. Applying this provision to any party to litigation that is defending against a claim, regardless of the party's initial posture, is the best way to carry out the legislature's intent. The district court's award of costs is affirmed.

16

*The district court did not err when it set the amount of the supersedeas bond.*

Finally, Allied contends that the district court erred when it set the amount of the supersedeas bond and permitted Barnhill to withdraw the remainder of settlement proceeds that had been deposited with the court. The parties advocate for different standards of review on appeal. Allied contends that this is a question involving statutory interpretation so that this court's review is de novo. Barnhill, on the other hand, contends that the district court's action was discretionary and so should be reviewed for an abuse of discretion.

It appears that the parties may be confused about the function and purpose of a supersedeas bond. According to K.S.A. 2016 Supp. 60-2103(d), "Whenever an appellant entitled thereto desires a stay on appeal, such appellant may present to the district court for its approval a supersedeas bond which shall have such surety or sureties as the court requires." A supersedeas bond stays enforcement of a judgment; if a supersedeas bond is not filed, a judgment creditor may seek execution of his or her judgment while the case is being appealed by the judgment debtor. See *Smith v. Almonte*, 32 Kan. App. 2d 224, 226, 81 P.3d 457 (2003). The purpose of requiring a supersedeas bond is "to protect nonappealing parties by maintaining the status quo during the appeal and insuring that those who have obtained the judgment under review will not be prejudiced by a stay of the judgment pending final determination of the appeal." 5 Am. Jur. 2d, Appellate Review § 402. In other words, a supersedeas bond is imposed on a *judgment debtor* as a condition of staying the judgment against him or her while he or she appeals. But see *In re Estate of Taylor*, 205 Kan. 347, 353, 358, 469 P.2d 437 (1970) (approving the district court's decision to set a bond as a tradeoff for allowing appellee/cross-appellant use of property he obtained in the judgment while the case was on appeal).

Here, both Allied and Barnhill are judgment creditors in that both have an interest in the money recovered from defendants. Allied and Barnhill also have interests that are

at odds with each other since they are battling for shares of the recovery. While this makes the facts of this case less straight forward than the typical appeal, in no case are Allied judgment debtors seeking to stay a judgment while their appeal is pending.

Allied argues that Barnhill should have been required to leave more money in the court coffers than he was so that Allied's recovery was guaranteed in the event that this court reversed and the district court recalculated Allied's portion of the recovery at a higher amount. While this does not seem to be the purpose or function of a supersedeas bond, the parties do not dispute that a bond was the proper mechanism for achieving Allied's desired goal of keeping money in escrow to secure any possible recovery on appeal or remand.

Without deciding whether a supersedeas bond was the proper mechanism for achieving Allied's goal, we affirm the district court. Our Supreme Court has said "[c]onditions to be prescribed for the security of the adverse party when judgment is stayed are within the discretion of the trial court." 205 Kan. at 357. A district court abuses its discretion if (1) it acts arbitrarily, fancifully, or unreasonably; (2) its decision is based on an error of law; or (3) its decision is based on an error of fact. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Here, the district court required Barnhill to leave far more money with it than was necessary to secure Allied's judgment. In their proposed findings of fact and conclusions of law following the hearing to determine the parties' relative fault in 2011, Allied calculated the amount it was entitled to recover from defendants as $433,202.18. Allied later amended that number to $486,479.66 in 2015, based on additional payments it made to Barnhill while this litigation was pending. The district court, however, found that Allied was only entitled to $85,259.84 and ordered judgment for them in that amount.

Since the goal here was to secure Allied's judgment and the district court set the amount of the appeal bond well in excess of the judgment, it cannot be said that the district court abused its discretion by setting the bond too low. Accordingly, the district court's decision is affirmed.

Affirmed.